1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

JUSTIN PARKER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

GEICO ADVANTAGE INSURANCE COMPANY, a foreign insurance company,

    Defendant.

Case No.:

## **CLASS ACTION COMPLAINT**

## **DEMAND FOR JURY TRIAL**

## **CLASS ACTION COMPLAINT**

  Plaintiff Justin Parker ("Plaintiff"), on behalf of himself and all others similarly situated, files this Class Action Complaint against GEICO Advantage Insurance Company ("GEICO"), and in support thereof states the following:

## **INTRODUCTION**

  1.  This is a class action lawsuit brought by Plaintiff, the named insured under a GEICO automobile policy issued for private passenger auto physical damage including comprehensive and collision coverage (the "Policy"). Defendant's Policy promises payment of "Actual Cash Value" ("ACV") in the event of a total loss of an insured vehicle. Pursuant to the terms of the Policy, ACV includes, *inter alia*, State sales tax. However, in violation of its Policy, GEICO refuses to pay sales tax (or, in rare cases, underpays sales tax) when it purports to pay ACV to insureds who have suffered a total loss of their insured vehicle.

2.      Defendant GEICO is one of the largest passenger auto insurance carriers operating in the State of Washington. One of the coverages GEICO sells to consumers is comprehensive and collision coverage. GEICO systematically and uniformly underpaid Plaintiff and thousands of other putative Class Members amounts owed its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

3.      Pursuant to its standard Policy form language, GEICO is obligated to pay insureds sales tax in making payment to insureds who suffer the total loss of an insured vehicle. The ACV of insured property, including automobiles, is not based on the amount, if any, originally paid by the insured for the total loss vehicle, nor on the amount, if any, paid by the insured to replace the total loss vehicle. Similarly, the amount of sales tax owed is not based on the amount in sales tax, if any, originally paid by the insured for the total loss vehicle, nor on the amount paid, if any, to replace the total loss vehicle; instead, the amount of sales tax owed is based on the underlying adjusted vehicle value of the total loss vehicle *at the time of loss* ("ACV sales tax").

4.      This lawsuit is brought by Plaintiff individually and on behalf of all other similarly situated insureds who have suffered damages due to GEICO's practice of refusing to pay full ACV sales tax to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

5.      The failure to pay ACV sales tax on first-party total losses owed to GEICO insureds pursuant to GEICO's uniform policy language constitutes a breach of the policy.

## **THE PARTIES**

6.      Plaintiff Justin Parker is domiciled and resides in Island County, Washington, and is a citizen of the State of Washington.

CLASS ACTION COMPLAINT - 2

7.      At all times material hereto, GEICO is and was a foreign corporation located in the State of Maryland, incorporated in Maryland and with its principal place of business in Maryland, and authorized to transact insurance in the State of Washington.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiff is a member of the putative class, which consists of at least 100 members, and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

9.      Venue is proper in this court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### The GEICO Policy

10.     Defendant GEICO's policy language as to comprehensive and collision coverage for ACV of total loss vehicles is standardized and is present in GEICO auto policies issued by Defendant in Washington. Indeed, Plaintiff and all putative Class members were insured under a standard, form policy that includes identical material language. The Policy under which Plaintiff was insured, which is materially identical to the Policy under which all putative Class members were insured, is affixed hereto as Exhibit A.

CLASS ACTION COMPLAINT - 3

11.    In Section III of the Policy, entitled "Physical Damages Coverages", GEICO states that it: "will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible." Policy at 9 (emphasis in original).[1]

12.    The Policy also states that GEICO "will pay for each **loss**, less the applicable deductible, caused other than by **collision** to the **owned** or **non-owned auto**." *Id*.

13.    "Collision" is defined as "**loss** caused by upset of the covered auto or its collision with another object[.]" *Id*. at 8.

14.    "Owned auto" is defined as, *inter alia*, any vehicle "for which a specific premium charge indicates there is coverage." *Id*.

15.    "Loss" is defined as "direct and accidental loss of or damage to" the insured auto. *Id*.

16.    The limit of liability is established as, *inter alia*, "the **actual cash value** of the property at the time of the **loss**." *Id*. at 10.

17.    "Actual cash value" is defined as "the replacement cost of the auto or property, adjusted if appropriate, for **depreciation** or **betterment** and condition." *Id*. at 9. The ACV of the vehicle, the Policy continues, "will be determined at the time of **loss**[.]" *Id*. at 10.

18.    There is no difference, for purposes of Defendant's duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim. *See generally id*.

19.    There is no difference and no distinction in the Policy between owned, financed, and leased vehicles. In fact, the Policy specifically asserts not only that "owned auto" includes

---

[1] Unless otherwise indicated, the emphasis within the quotations of Plaintiff's Complaint are in the Policy.

CLASS ACTION COMPLAINT - 4

*any* auto for which a premium is paid—even if financed or leased—but also that owned autos *include* autos leased for a period of over six months. *Id*. at 8-9.

20.    Clearly, then, the policy language does not further define ACV as including, for example: (1) any provision excluding sales tax from ACV; (2) any provision deferring payment of the ACV sales tax for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all; or (4) any provision linking the amount of ACV sales tax to amounts originally paid for the total loss vehicle or amounts actually incurred in replacing the total loss vehicle. Instead, the Policy establishes ACV as a *predictable amount* upon which both GEICO and the insured can rely.

21.    The ACV of the insured vehicle is an independent amount. The ACV is the same whether the insured paid nothing for the total loss vehicle, paid less than what the vehicle was worth, or paid more than what the vehicle was worth. The ACV is the same whether the insured replaces the vehicle with a more expensive vehicle, a less expensive vehicle, or chooses not to replace the vehicle at all.

22.    The policy language applies to all covered autos irrespective of ownership interests—whether owned, financed or leased, insured autos are considered "owned" or are treated and defined identically for purposes of the policy.

**Sales Tax is a Replacement Cost**

23.    Sales tax is a mandatory cost imposed by the State of Washington on every vehicle purchase. There is no exception to the imposition of sales tax for insureds replacing a total loss vehicle. It is impossible to replace a total loss vehicle—or to purchase any vehicle under any circumstances—without payment of sales tax.

24.     As set forth above, GEICO promises to pay the ACV of an insured vehicle in the event of, *inter alia,* a total loss; and defines ACV as the replacement cost of the insured vehicle, less depreciation. Sales tax is incontrovertibly an element of the replacement cost of the vehicle, and is therefore incontrovertibly an element of the ACV of the insured vehicle.

25.     Thus, sales tax is inherently part of the costs to replace an insured property, including a vehicle. *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *8 (N.D. Cal. May 22, 2017) (citing *Tolar v. Allstate Texas Lloyd's Co.*, 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (explaining that the "ordinary meaning of replacement costs" in the context of ACV is "a composite of all reasonably foreseeable repair or replacement costs, including . . . sales tax"); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]he cost to repair and replace property with new materials would necessarily include the state and local taxes on the materials purchased to make the repairs.")).

**GEICO Systematically Fails to Pay Sales Tax**

26.     GEICO's uniform procedure is to use a third-party vendor, CCC Information Services Inc. ("CCC"), to determine the "base" and "adjusted" value of total loss vehicles by using the price to purchase comparable vehicles at the time of the loss. The base value takes into account depreciation (age, mileage, etc.), while the adjusted value takes into account the actual condition of the total loss vehicle relative to comparable vehicles.

27.     The adjusted vehicle value is otherwise known as the "appraised" value of the vehicle, and it is the amount on which the sales tax owed is based – otherwise, it is irrelevant to this lawsuit and Plaintiff does not challenge the determination of the adjusted vehicle value.

28.     In addition to the appraised value (which takes into account depreciation and condition), other mandatory replacement costs—sales tax—is a component of the ACV, and,

CLASS ACTION COMPLAINT - 6

therefore, should be included in Defendant's calculation of the ACV. *See Johnson*, 2017 WL 2224828, at *8.

29.    GEICO's Policy permits deductions for depreciation and subtraction of any applicable deductible and salvage retention value from the ACV owed to insureds.

30.    Under the terms of the Policy, therefore, the ACV of a vehicle is the adjusted vehicle value, *plus sales tax* calculated as a percentage of the adjusted vehicle value. Thus, the amount owed insureds who suffer a total loss is the adjusted vehicle value, plus sales tax calculated as a percentage of the adjusted vehicle value, less any applicable deductible and salvage retention value.

31.    Nevertheless, in Washington, GEICO uniformly does *not* pay the sales tax owed as a part of the ACV replacement costs.

32.    GEICO's Policy does not contain any provision or clause stating GEICO will pay only a prorated or partial amount of the costs to replace the insured vehicle. Instead, GEICO simply promises to pay the costs to replace the vehicle. Moreover, by excluding depreciation and actual condition from the costs of replacement, GEICO further indicates that replacement costs *not* excluded would be paid. If GEICO had wanted to exclude all or part of the replacement costs (like depreciation and condition), it could have done so.

33.    GEICO's Policy does not distinguish between owned, financed, and leased vehicles; instead, it explicitly treats them the same for purposes of ACV payments. It promises to

pay precisely the same amount—replacement costs of the insured vehicle minus depreciation—to every policyholder.[2]

34.    GEICO's Policy promises payment of full sales tax as part of the cost to replace the vehicle, without taking into account, for example, what amount, if any, was previously paid for the vehicle, nor what amount, if any, is actually incurred in replacing the vehicle. In fact, if the insured received the vehicle as a gift and, therefore, paid no sales tax at all, the ACV of the insured vehicle, according to the terms of the Policy, is nevertheless unaffected. If the insured *does not replace the total loss vehicle at all*, the ACV of the vehicle is unaffected. GEICO's Policy does not condition payment of ACV on actual replacement. *See generally* Policy.

**Plaintiff's Total Loss Claims**

35.    At all times material hereto, Plaintiff insured a 2013 Hyundai Veloster, VIN # KMHTC6AE8DU088226.

36.    Plaintiff insured the 2013 Hyundai Veloster, (the "insured vehicle") under an insurance policy issued by Defendant. Exhibit A (Policy); Exhibit B (Decl. Sheet).  Defendant insured Plaintiff's vehicle according to this Policy at all times material hereto.

---

[2] These allegations should come as no surprise to Defendant, given that at least one court has already found that similar conduct by GEICO constitutes a breach of contract. Specifically, in *Roth v. Geico General*, the Court cogently held that GEICO's procedure breached its (materially identical) contract by failing to include in an ACV payment taxes and fees: "[A]s sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, the Court concludes that they are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased." *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-CIV, 2018 WL 3412852, at *4 (S.D. Fla. June 14, 2018), attached as Exhibit E (Order on Summary Judgment).  Further, the Court found, "the Policy does not distinguish between the ACV and replacement costs for owned, financed, or leased vehicles, and provides no notice to GEICO's insureds that their leased vehicles will be valued differently." *Id*. at *3.

CLASS ACTION COMPLAINT - 8

37.    On or about May 15, 2020, Plaintiff was involved in an accident while operating the insured vehicle. As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 066624734-0000-001.

38.    Following the filing of said claim, GEICO, through its third-party vendor, CCC, determined that the vehicle was a total loss with a base value of $8,405.00, with a condition adjustment of $333.00, and an adjusted vehicle value of $8,738.00.00. Exhibit C (Market Valuation Report) (the "Report").

39.    The base value and adjusted vehicle value are calculated by CCC based on the "sticker price" of comparable vehicles listed for sale in the local market.

40.    GEICO added registration fees of $8.00 and DMV fees of $14.50, subtracted the deductible of $500.00, but did not include any amount for sales tax. Exhibit D (Total Loss Settlement Letter).

41.    GEICO then made a payment to Plaintiff for a total of $8,260.50. *Id.*

42.    The applicable sales tax based on Plaintiff's residency was 8.7%. Specifically, Plaintiff was owed sales tax in the amount of 6.5% state sales tax, plus local surtax of 2.2%, of the adjusted vehicle value of her insured vehicle. Thus, the ACV sales tax owed as a part of the ACV of the insured vehicle was $760.21.

43.    GEICO did not include sales tax in making its (purported) ACV payment to Plaintiff, thereby breaching the terms of Plaintiff's Policy.

44.    Sales tax is a mandatory applicable cost that must be paid to replace or purchase any vehicle in the State of Washington.

45.    In breach of its contract with Plaintiff, GEICO did not include any sales tax in making the ACV payment for Plaintiff's total loss.

46.    Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident. By paying the claim—albeit insufficiently—GEICO acknowledged that Plaintiff satisfied all conditions precedent required under the Policy.

## CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this action seeking representation of a class pursuant to Federal Rule of Civil Procedure 23.

48.    Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All individuals insureds under a Washington policy issued by GEICO Advantage Insurance Company with the same operative policy language covering an insured vehicle with private-passenger auto physical damage coverage with comprehensive or collision coverage, who made a first-party claim, whose claim was determined to be, and adjusted as, a total loss under comprehensive or collision coverage, and where the total loss payment did not include sales tax calculated as the applicable state and local percentage of the adjusted vehicle value ("ACV Sales Tax") within ten years prior to the date on which this lawsuit was filed through the date of any certification order.

49.    Certification of the above class is supported by the following considerations:

CLASS ACTION COMPLAINT - 10

    a.   The relatively small amount of damages that members of the class have suffered on an individual basis would not justify the prosecution of separate lawsuits;

    b.   Counsel in this class action are not aware of any previously filed litigation against GEICO in which any of the members of the class is a party and which any question of law or fact in the subject action can be adjudicated; and

    c.   No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

50.    Although the precise number of members of the Class are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff understands Defendant to be one of the largest motor vehicle insurers in the State of Washington—one that writes hundreds of millions of dollars of physical damage coverage premiums. Thus, the class of persons affected by Defendant's unlawful practice alleged herein consists of thousands of individuals, or the class of persons effected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a systematic and uniform practice, employed by Defendant in violation of standardized and uniform insurance policy language, which results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the Class members.

51.    The precise number of members of the Class can only be determined through discovery. However, upon information and belief, including investigation by their attorneys and

public information concerning the statistical likelihood of total losses per premiums written, Plaintiff believes the Class is comprised of approximately 8,000 members. Numerosity under Rule 23(a)(1) is established.

52.    Rule 23(a)(2)'s commonality requirement is also satisfied. The central issues in this litigation turn on the interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. Defendant and all members of the Class, including Plaintiff, are bound by materially identical policy terms.

53.    As to the Class, common questions include (but are not limited to): (1) whether, under the Defendant's standardized policy language, insureds are owed sales tax upon the total loss of an insured vehicle; and (2) whether Defendant breached its insurance contracts with Plaintiff and the class members by not paying sales tax upon the total loss of an insured vehicle.

54.    Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiff and members of the Class were injured by Defendant's uniform misconduct.  Further, Plaintiff and Class members' legal claims arise from the same core practices: namely, the failure to pay the full ACV of insured vehicles on first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the members of the Class. Plaintiff suffered the same harm as all other members of the Class: the coverage for sales tax that Defendant failed to pay or underpaid its insureds.  Plaintiff is not subject to any unique defenses nor does Plaintiff bring any unique claims.

55.    The relevant Policy provisions for each Class member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class member is the same.

56.    Rule 23(b)(3)'s predominance requirement is satisfied. The previously articulated common issues of fact and law predominate over any question solely affecting individual Class

members. As to the Class, the critical common question—does Defendant's promise to pay the ACV of the total loss vehicle obligate it to include ACV sales tax to insureds—is identical for every member of the Class.

57.    Further, the measure of damages, if any, is the same for every member of the Class, and any variances in damages will reflect only variances in underlying vehicle values (some vehicles are more expensive than others, and thus the applicable ACV sales tax owed will be different), the application of which is a purely ministerial function. Otherwise, there are no individualized questions of fact or law.

58.    Further, Rule 23(b)(3)'s superiority requirement is met here: class treatment is superior to any other alternative method of adjudication because the damages suffered by individual members of the Class is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class members to seek individual redress for the wrongs done to them. Even if some members of the Class could afford individual litigation, the court system could not. Thousands of individual cases asserting precisely the same claim that Plaintiff asserts here would be uneconomical and would strain (indeed, likely overwhelm) judicial resources.

59.    As to the Class, class treatment is superior because every claim—all based on uniform conduct and a form contract—will be substantially determined by answering the single question of whether Defendant's Policy obligates payment of sales tax. It is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. No difficulty would be encountered in the management of this case that would preclude its maintenance as a class action. To the contrary, several other similar total loss class actions against other insurers (including

Defendant in a different state) were successfully treated as class actions. *See, e.g.*, *Roth v. Geico General*, Exhibit E.

60.    Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff possesses no conflict with members of the Class. Plaintiff's claim does not conflict with that of any member of the Class, and Plaintiff has no financial or any other interest conflicting with those of the Class. Plaintiff fully intends to vigorously protect the interests of Class members in prosecuting these claims.

61.    Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Moreover, Plaintiff's counsel have successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include ACV Sales Tax after total losses.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT FOR FAILURE TO PAY ACV SALES TAX

#### (By Plaintiff on Behalf of Himself and the Class)

62.    Plaintiff incorporates by reference paragraphs 1-61 as though fully set forth herein.

63.    Plaintiff was party to an insurance contract with Defendant as described herein. All Class members were parties to insurance contracts with Defendant containing materially identical terms.

64.    The interpretation of Plaintiff's and all Class members' Policies is governed by Washington law.

65.    Plaintiff and all Class members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

66.     Defendant, by paying the total loss claim, determined that Plaintiff and each Class members complied with the terms of his or her insurance contract, and fulfilled all required duties and conditions under the Policy for the insured to be paid on his or her total loss.

67.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Class member were owed the ACV of the vehicle, which, per the terms of the Policies, includes sales tax calculated as a percentage of the adjusted vehicle value.

68.     Defendant refused or otherwise failed to pay ACV Sales Tax as part of its purported ACV payment to Plaintiff and every Class member, following Defendant's determination that a vehicle was a total loss.

69.     Defendant's failure to provide payment for the ACV sales tax constitutes a material breach of contract with Plaintiff and every Class member.

70.     As a result of said breaches, Plaintiff and the Class members are entitled, under Defendant's insurance Policies, to sums representing the benefits owed for ACV sales tax, as well as costs, pre-judgment and post-judgment interest, injunctive relief and other relief as is appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a trial by jury on all triable issues and seek and pray for relief and judgment as follows:

For an Order certifying this action as a Class Action on behalf of the Class described above;

For an award of compensatory damages for Plaintiff and members of the Class in amounts owed under the Policies;

For all other damages according to proof;

For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

For pre- and post- judgment interests on any amounts awarded; and

For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED: September 27, 2021.

**THE HARBOR LAW GROUP**

*/s/ Kira M. Rubel*
Kira M. Rubel, WSBA #51691
3615 Harborview Drive, NW, Suite C
Gig Harbor, WA 98332-2129
Telephone: (253) 358-2215
kira@theharborlawgroup.com

**SHAMIS GENTILE, P.A.**
Joshua Moyer, Esq.
*(pro hac vice forthcoming)*
California Bar No. 259908
jmoyer@shamisgentile.com
401 W. A street, Suite 200
San Diego, CA 92101
Office: (305) 479-2299
Fax: (786) 623-0915

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
*(pro hac vice forthcoming)*
Florida Bar No. 0100537
California Bar No. 330990
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Office: (786) 289-9471
Direct: (305) 975-3320
Fax: (786) 623-0915

*For Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT - 16

# EXHIBIT A

# GEICO

**Telephone: 1-800-841-3000**

# Washington Family Automobile Insurance Policy

**GEICO ADVANTAGE INSURANCE COMPANY**

*2000014601808027460720115884*

A-30-WA (12-11)

# YOUR POLICY INDEX

## SECTION I - LIABILITY COVERAGES

### Your Protection Against Claims From Others

Definition of Terms................................................3
Losses We Will Pay For You....................................3
Additional Payments We Will Make for You.............4
    Legal Expenses and Court Costs
    Bail and Appeal Bonds
    First Aid Expenses
Exclusions: When These Coverages Do Not Apply...4
Persons Insured:  Who Is Covered..........................5
Financial Responsibility Laws .................................5
Out of State Insurance...........................................5
Limits of Our Liability For a Loss ............................5
Conditions...........................................................6
    Notice:  Reporting Your Loss If Suit is
      Brought Against You
    Two or More Automobiles Insured
      Under This Policy
    Your Assistance and Cooperation
    Action Against Us
    Subrogation

## SECTION II - AUTOMOBILE MEDICAL PAYMENTS COVERAGE

### Protection For You and Your Passengers for Medical Expenses

Definition of Terms................................................6
Payments We Will Make To Whom and When
    This Coverage Applies ..........................................7
Exclusions: When This Coverage Does Not Apply....7
Limits of Our Liability For a Loss ............................7
Conditions...........................................................7
    Notice:  Reporting Your Loss
    Two or More Automobiles Insured Under
      This Policy
    Action Against Us
    Medical Reports
    Subrogation

## SECTION III - PHYSICAL DAMAGE COVERAGES

### Your Protection for Loss of or Damage to Your Car

Definitions of Terms...............................................8
Comprehensive Coverage.......................................9
Collision Coverage.................................................9
Additional Payments We Will Make For You............9
Exclusions: When These Coverages Do Not Apply..10
Limits of Our Liability For a Loss ...........................10
Conditions...........................................................11
    Notice:  Reporting Your Loss
    Two or More Automobiles Insured Under
      This Policy

    Your Assistance and Cooperation
    Action Against Us
    Your Duties in Event of Loss
    Appraisal of Amount of Loss
    Payment of Loss
    No Benefit to Bailee
    Subrogation

## SECTION IV - UNDERINSURED MOTORISTS COVERAGE

### Your Protection for Injuries Caused by Underinsured and Hit and Run Motorists

Definition of Terms................................................12
Losses We Pay.......................................................13
Exclusions: When These Coverages Do Not Apply.13
Limits of Our Liability For a Loss ...........................13
Arbitration:  Resolving a Disagreement...................14
Trust Agreement:  Our Right of Recovery...............14
Conditions...........................................................14
    Notice:  Reporting Your Loss
    Additional Duties
    Your Assistance and Cooperation
    Action Against Us
    Proof of Claim - Medical Reports
    Who Receives "Payment of Losses"

## SECTION V - GENERAL CONDITIONS

### The Following Apply to All Coverages in This Policy

Territory ..............................................................15
Premium:  How Adjustments Are Made...................15
Changes to Your Policy..........................................15
Assignment of Your Interest in This Policy to
    Others ..............................................................16
Cancellation of the Policy:.....................................16
    By You
    By Us
    By Us Is Limited
Renewal of Your Policy...........................................16
Other Insurance....................................................17
Dividend Provisions ..............................................17
Declarations:  Your Agreements............................17
Fraud and Misrepresentation..................................17
Examination Under Oath........................................17
State Statutes:  Conformity With Statutes ..............17
Disposal of Vehicle ...............................................17
Policy Period  .......................................................17
Choice of Law .......................................................17

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

Special Endorsement - United States
    Government Employees.......................................18

**Whenever, "he," "his," "him," or "himself" appears in this policy, you may read "her," "she," "hers," or "herself."**

## AGREEMENT

**We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder.  Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:**

---

**SECTION I**
**Liability Coverages**
**Your Protection Against Claims From Others**
**Bodily Injury Liability and Property Damage Liability**

---

## DEFINITIONS

The words italicized in Section I of this policy are defined below.

1.  ***Auto business*** means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2.  ***Bodily injury*** means bodily injury to a person, including resulting sickness, disease, or death.

3.  ***Farm auto*** means a truck type vehicle with a load capacity of 2000 pounds or less, not used for commercial purposes other than farming.

4.  ***Insured*** means a person or organization described under "persons insured."

5.  ***Non-owned auto*** means an automobile or ***trailer*** not owned by or furnished for the regular use of either *you* or a ***relative***, other than a ***temporary substitute auto***.  Except for a ***temporary substitute auto***, an auto rented or leased for more than 30 days will be considered as furnished for regular use.

6.  ***Owned auto*** means:

    (a) A vehicle described in this policy for which a premium charge is shown for these coverages;

    (b) A ***Trailer*** owned by *you*;

    (c) A ***Private passenger***, ***farm*** or ***utility auto***, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if:

    (i)  It replaces an ***owned auto*** as defined in (a) above; or

    (ii) We insure all ***private passenger***, ***farm*** and ***utility autos*** owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

    (d) ***Temporary substitute auto***.

7.  ***Private passenger auto*** means a four-wheel private passenger, station wagon, or jeep-type auto.

8.  ***Relative*** means a person related to *you* who resides in *your* household.  This includes *your* ward or foster child.

9.  ***Temporary substitute auto*** means an automobile or ***trailer***, not owned by *you*, temporarily used with the permission of the owner.  This vehicle must be used as a substitute for the ***owned auto*** or ***trailer*** when withdrawn from normal use because of its:

    (a) Breakdown;

    (b) Repair;

    (c) Servicing;

    (d) Loss; or

    (e) Destruction.

10. ***Trailer*** means a trailer designed to be towed by a ***private passenger auto***, if not being used for business or commercial purposes with a vehicle other than a ***private passenger***, ***farm*** or ***utility auto***.

11. ***Utility auto*** means a vehicle, other than a ***farm auto***, with a G.V.W. of 10,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. ***War*** means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion, or revolution.

13. ***You*** and *your* mean the policyholder named in the declarations or his or her spouse if a resident of the same household.

## LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an ***insured*** becomes legally obligated to pay because of:

1.  ***Bodily injury*** sustained by a person, and

2.  Damage to or destruction of property.

The **bodily injury** or damage or destruction to property must arise out of the:

(a)  Ownership;
(b)  Maintenance; or
(c)  Use

of the **owned auto** or a **non-owned auto**.

We will defend any suit for damages payable under the terms of this policy.  We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1.  All investigative and legal costs incurred by us.

2.  All court costs charged to an **insured** in a covered lawsuit.

3.  Interest calculated on that part of a judgment that is within our limit of liability and accruing:

    (a)  Before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage;
    (b)  After the judgment, and until we pay, offer or deposit in court, the amount due under this coverage.

4.  Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

5.  Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned auto** or **non-owned auto**, not to exceed $250 per bail bond.

6.  We will upon request by an **insured,** provide reimbursement for the following items:

    (a)  Costs incurred by any **insured** for first aid to others at the time of an accident involving an **owned auto** or **non-owned auto.**
    (b)  Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.
    (c)  All reasonable costs incurred by an **insured** at our request.

## EXCLUSIONS

### When Section I Does Not Apply

We will not defend any suit for damage if one or more of the exclusions listed below applies.

1.  Section I does not apply to any vehicle used to carry passengers or goods for hire.  However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2.  **Bodily injury** or property damage caused intentionally by or at the direction of an **insured** is not covered.

3.  We do not cover **bodily injury** or property damage that is insured under a nuclear liability policy.

4.  **Bodily injury** or property damage arising from the operation of farm machinery is not covered.

5.  **Bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured** is not covered.

    However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workers' compensation law.

6.  We do not cover **bodily injury** to a fellow employee of an **insured** if the fellow employee's **bodily injury** arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available.  We will defend **you** if a suit is brought by a fellow employee against **you** alleging use, ownership or maintenance of an auto by **you.**

7.  We do not cover an **owned auto** while used by a person (other than **you** or a **relative**) when he is employed or otherwise engaged in the **auto business.**

8.  A **non-owned auto** while maintained or used by any person is not covered while such person is employed or otherwise engaged in 1) any **auto business**; 2) any other business or occupation of any **insured**, except a **private passenger auto** used by **you** or **your** chauffeur or domestic servant while engaged in such other business.

    However, coverage does apply to a **non-owned private passenger auto** used by **you, your** chauffeur or a domestic servant, while engaged in the business of an **insured.**

9.  We do not cover damage to:

    (a)  Property owned, operated or transported by an **insured**; or
    (b)  Property rented to or in charge of an **insured** other than a residence or private garage.

10.  We do not cover an auto acquired by **you** during the policy term, if **you** have purchased other automobile liability insurance for it.

11. We do not cover:
    (a) The United States of America or any of its Agencies;
    (b) Any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

12. ***Bodily injury*** or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

13. ***Bodily injury*** or property damage that results from bio-chemical attack or exposure to bio-chemical agents is not covered.

14. We do not cover bodily injury or property damage that results from the operation of a ***non-owned auto*** or ***temporary substitute auto*** that is designed for use principally off public roads that is not registered for use on public roads.

15. We do not cover liability assumed under any contract or agreement.

16. We do not cover ***bodily injury*** or property damage caused by an auto driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

17. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as ***insureds*** with regard to an ***owned auto:***

1. ***You*** and ***your relatives***;

2. Any other person using the auto with ***your*** permission.  The actual use must be within the scope of that permission;

3. Any other person or organization for his or its liability because of acts or omissions of an ***insured*** under 1 or 2 above.

Section I applies to the following with regard to a ***non-owned auto:***

1. (a) ***You***;
    (b) ***Your relatives*** when using a ***private passenger, utility,*** or ***farm auto,*** or ***trailer***.

    Such use by ***you*** or ***your relatives*** must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2. A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an ***insured*** under 1 above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of ***insureds*** involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law.  The ***insured*** agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of ***your*** state, we agree to increase ***your*** coverages to the extent required of out-of state motorists by local law.  This additional coverage will be reduced to the extent that ***you*** are protected by another insurance policy.  No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or ***trailers*** to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of ***bodily injury*** sustained by one person as the result of one occurrence.

2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of ***bodily injury*** sustained by two or more persons as the result of any one occurrence.

3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

4. For accidents which occur in Alaska, all court costs charged to an ***insured*** in a covered lawsuit, including attorney fee payments shall not exceed the amount that could be awarded in accordance with the percentage schedule contested cases as specified in Alaska Rule of Civil Procedure 82(b) (1) in a case in which a judgment equal to the liability policy limit or limits applicable to the loss rendered.

If a judgment is rendered against *you* in excess of *your* liability policy limits, you will be responsible for attorney fees awarded in accordance with Alaska Rule of Civil Procure 82(b) (1) which exceed that which would be allowable under the schedule for contested cases if the judgment rendered was within *your* policy limit.

## CONDITIONS

The following conditions apply to Section I:

1.  NOTICE

    As soon as possible after an occurrence written notice must be given us or our authorized agent stating:

    (a)  The identity of the *insured*;
    (b)  The time, place and details of the occurrence;
    (c)  The names and addresses of the injured, and of any witnesses; and
    (d)  The names of the owners and the description and location of any damaged property.

    If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2.  TWO OR MORE AUTOS

    When this policy covers two or more autos, the limit of coverage applies separately to each.  An auto and an attached *trailer* are considered to be one auto.

3.  ASSISTANCE AND COOPERATION OF THE *INSURED*

    The *insured* will cooperate and assist us, if requested:

    (a)  In the investigation of the occurrence;
    (b)  In making settlements;
    (c)  In the conduct of suits;
    (d)  In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage; and
    (e)  At trials and hearings;
    (f)  In securing and giving evidence; and
    (g)  By obtaining the attendance of witnesses.

    Only at his own cost will the *insured* make a payment, assume any obligation, or incur any cost other than for first aid to others.

4.  ACTION AGAINST US

    We cannot be sued:

    (a)  Unless the *insured* has fully complied with all the policy's terms and conditions, and
    (b)  Until the amount of the *insured's* obligation to pay has been finally determined, either
        (i)  By a final judgment against the *insured* after actual trial; or
        (ii)  By written agreement of the *insured*, the claimant and us.

    A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

    No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

    Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

5.  SUBROGATION

    When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others.  After the *insured* has been fully compensated for his loss, we will have the right to recover up to the amount of our payment from the remaining proceeds of the settlement or judgment.

    This means we have the right to sue for or otherwise recover the loss from anyone else who may be held responsible. The *insured* will do nothing after loss to prejudice these rights.

---

### SECTION II
### Auto Medical Payments
### Protection For You and Your Passengers For Medical Payments

---

## DEFINITIONS

The definitions of terms shown under Section I apply to this coverage.  In addition, under this coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this coverage, we will pay all reasonable expenses for necessary:

    (a) Medical;
    (b) Surgical;
    (c) X-ray and
    (d) Dental services;
    (e) Prosthetic devices;
    (f) Ambulance;
    (g) Hospital;
    (h) Professional nursing; and
    (i) Funeral services

actually incurred by an *insured* within three years from the date of the accident.

This coverage applies to:

1. *You* and each *relative* who sustains *bodily injury* caused by accident:

    (a) While *occupying* the *owned auto*; or
    (b) While *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
    (c) When struck as a pedestrian by an auto or *trailer.*

2. Any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

**EXCLUSIONS**

**When Section II Does Not Apply**

1. There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

    (a) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
    (b) A vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war.*

6. The United States of America or any of its Agencies are not covered as an *insured,* a third party beneficiary, or otherwise.

7. There is no coverage for *bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

8. There is no coverage for *bodily injury* that results from bio-chemical attack or exposure to bio-chemical agents.

9. We do not cover *bodily injury* or property damage caused by an auto driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**LIMITS OF LIABILITY**

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

**CONDITIONS**

The following conditions apply to this coverage:

1. NOTICE

As soon as possible after an accident, written notice must be given us or our authorized agent stating:

    (a) The identity of the *insured*;
    (b) The time, place and details of the accident; and
    (c) The names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached **trailer** are considered to be one auto.

3. ACTION AGAINST US

We cannot be sued unless the **insured** has fully complied with all the policy terms.

4. MEDICAL REPORTS-PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the **insured**.

5. SUBROGATION

When we make a payment under this coverage we will have the right to bring suit or other action against any person or organization legally liable for the **bodily injury** to recover our payment. After the **insured** has been fully compensated for his loss, we will have the right to recover up to the amount of our payment from the remaining proceeds of the settlement or judgment.

---

**SECTION III**
**Physical Damage Coverages**
**Your Protection For Loss or Damage To Your Car**

---

**DEFINITIONS**

The definitions of the terms **auto business, farm auto**, **private passenger auto, relative, temporary substitute auto, utility auto, you**, **yours,** and **war** under Section I apply to Section III also.

Under this Section, the following special definitions apply:

1. **Collision** means **loss** caused by upset of the covered auto or its collision with another object, including an attached vehicle.

**Losses** caused by the following are comprehensive **losses:**

| | |
|---|---|
| (a) Missiles; | (j) Hail; |
| (b) Falling objects; | (k) Water; |
| (c) Fire; | (l) Flood; |
| (d) Lightning; | (m) Malicious mischief; |
| (e) Theft; | (n) Vandalism; |
| (f) Larceny; | (o) Riot; |
| (g) Explosion; | (p) Civil commotion; or |
| (h) Earthquake; | (q) Colliding with a bird or animal. |
| (i) Windstorm; | |

2. **Insured** means:

(a) Regarding the **owned auto**:
   (i) **You** and **your relatives;**
   (ii) A person or organization maintaining, using, or having custody of the auto with **your** permission, if his use is within the scope of that permission.
(b) Regarding a **non-owned auto**; **you** and **your relatives**, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

3. **Loss** means direct and accidental loss of or damage to:

(a) The auto, including its equipment; or
(b) Other insured property.

4. **Non-owned auto** means a **private passenger, farm,** or **utility auto** or **trailer** not owned by or furnished for the regular use of either **you** or **your relatives**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or **trailer** within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

5. **Owned auto** means:

(a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;

(b) A *private passenger*, *farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more; if
   (i)  It replaces an *owned auto* as described in (a) above, or
   (ii)  We insure all *private passenger*, *farm*, *utility autos* and *trailers* owned or leased by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;

(c) A *temporary substitute auto*.

6. *Trailer* means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

7. *Actual cash value* is the replacement cost of the auto or property, adjusted if appropriate, for *depreciation* or *betterment* and condition.

8. *Depreciation* means a decrease or *loss* in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

9. *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

10. *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which;

  (a) Are permanently installed or attached; or

  (b) Alter the appearance or performance of a vehicle.

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the owned auto or a newly acquired vehicle using bolts or brackets, including slide-out-brackets.

## LOSSES WE WILL PAY FOR *YOU*

### Comprehensive (Excluding Collision)

1. We will pay for each *loss,* less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage.

  No deductible will apply to *loss* caused by fire, lightning, smoke, or damage sustained while the vehicle is being transported on any conveyance.

  At the option of the *insured*, breakage of glass caused by *collision* may be paid under the collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:

  (a) Fire;
  (b) Lightning;
  (c) Flood;
  (d) Falling objects;
  (e) Earthquake;
  (f) Explosion; or
  (g) Theft of the entire automobile.

  The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

  No deductible will apply due to *loss* by fire or lightning.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

1. We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

  Reimbursement will not exceed $25.00 per day nor $750.00 per *loss*.

**EXCLUSIONS**

**When the Physical Damage Coverages Do Not Apply**

1. An auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.
2. *Loss* due to *war* is not covered.
3. We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.
4. There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.
5. Tires, when they alone are damaged by *collision*, are not covered.
6. *Loss* due to radioactivity is not covered.
7. *Loss* to any tape, wire, record disc, or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.
8. We do not cover *loss* to any radar or laser detector.
9. We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger*, *farm* or *utility autos*.
10. There is no coverage for *loss* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.
11. There is no coverage for *loss* that results from bio-chemical attack or exposure to bio-chemical agents.
12. We do not cover *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.
13. There is no coverage for any liability assumed under any contract.
14. There is no coverage for any *loss* from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal, or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) Any confiscation, seizure, or impoundment of a vehicle by governmental authorities; or
    (d) The sale of an *owned auto*.
15. There is no coverage for the destruction, impoundment, confiscation, or seizure of a vehicle by governmental or civil authorities due to its use by *you,* a *relative* or permissive user of the vehicle in illegal activity.
16. There is no coverage for any *loss* caused by participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**LIMITS OF LIABILITY**

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of the *loss*;
2. Will not exceed the cost to repair or replace the property, or any of its parts, including parts from non-original equipment manufacturers, with others of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the *loss*;
3. To personal effects arising out of one occurrence is $200;
4. To a *trailer* not owned by *you* is $500;
5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.
6. Deductions for *betterment* and *depreciation* are permitted only for parts normally subject to repair and replacement during the useful life of the insured motor vehicle. Deductions for *betterment* and *depreciation* shall be limited to the lesser of an amount equal to the proportion that the expired life of the part to be repaired or replaced bears to the normal useful life of that part, or the amount which the resale value of the vehicle is increased by the repair or replacement.
7. For glass repair or replacement, will not exceed the prevailing competitive price. Although *you* have the right to choose any glass repair facility or location, the limit of liability for loss to the window glass is the cost to repair or replace such glass but will not exceed the prevailing competitive price. This is the price we can secure from a competent and conveniently located glass repair facility. At *your* request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE

   As soon as possible after a *loss*, written notice must be given to us or our authorized agent stating:

   (a) The identity of the *insured;*
   (b) A description of the auto or *trailer*;
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.

   In case of theft, the *insured* must promptly notify the police.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

   The *insured* will cooperate and assist us, if requested:

   (a) In the investigation of the *loss*;
   (b) In making settlements;
   (c) In the conduct of suits;
   (d) In enforcing any right of subrogation against any legally responsible person or organization;
   (e) At trials and hearings;
   (f) In securing and giving evidence; and
   (g) By obtaining the attendance of witnesses.

4. ACTION AGAINST US

   We cannot be sued unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a loss to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase salvage from us if you wish.

5. *INSURED'S* DUTIES IN EVENT OF *LOSS*

   In the event of *loss* the *insured* will:

   (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
   (b) File with us within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.
   (c) At our request, the *insured* will exhibit the damaged property.

6. APPRAISAL

   If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

   Neither we nor the *insured* waive any of our rights under this policy by agreeing to an appraisal.

7. PAYMENT OF *LOSS*

   We may at our option:

   (a) Pay for the *loss*; or
   (b) Repair or replace the damaged or stolen property.

   At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8. NO BENEFIT TO BAILEE

   This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

9. SUBROGATION

When we make a payment under this coverage we will be subrogated to all the insured's rights of recovery against others. After the *insured* has been fully compensated for his *loss,* we will have the right to recover up to the amount of our payment from the remaining proceeds of the settlement or judgment.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible. The *insured* will do nothing after a *loss* to prejudice these rights. The *insured* will help us to enforce these rights.

## SECTION IV
## Underinsured Motorists Coverage
## Protection For You and Your Passengers For Injuries Caused By Underinsured and Hit and Run Motorists

### DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. *Accident* means an occurrence that is unexpected and unintended from the standpoint of the *insured*.

2. *Hit-and-run vehicle* is one whose owner or operator cannot be identified and which makes physical contact with the *insured* or the vehicle which the *insured* is *occupying* at the time of the *accident*, resulting in *bodily injury* or *property damage* to an *insured.*

3. *Insured* means:
   (a) *You;*
   (b) A *relative;*
   (c) Any other person *occupying* an *owned auto*; or
   (d) Any person who is entitled to recover because of *bodily injury* or *property damage* sustained by an *insured* under (a), (b), and (c) above.

   If there is more than one *insured*, our limits of liability will not be increased.

4. *Insured Auto* means:
   (a) An auto described in the declarations; and
   (b) Covered by the bodily injury and property damage liability coverages of this policy;
   (c) A *temporarily substituted auto;* or
   (d) An auto operated by *you.*

5. *Phantom vehicle* means a motor vehicle which causes *bodily injury* or *property damage* to an *insured* and has no physical contact with the *insured* or the vehicle which the *insured* is *occupying* at the time of the accident.

6. *Property damage* means damage to or destruction of property.

7. *Occupying* means:
   (a) In;
   (b) Upon;
   (c) Entering into; or
   (d) Alighting from.

8. *Underinsured Motor Vehicle* means a land motor vehicle or *trailer:*
   (a) Which has no bodily injury and property damage liability bond or policy in effect at the time of the *accident*;
   (b) Which has a liability bond or insurance that applies at the time of the *accident* but the limits of that insurance are less than the amount the *insured* is legally entitled to recover for damages;
   (c) Whose insurer denies coverage;
   (d) Whose insurer is or becomes insolvent;
   (e) A *hit-and-run vehicle;* or
   (f) A *phantom vehicle.*

   If there is an accident involving a *phantom vehicle* the facts of the accident must be proven. We will accept competent evidence. We will not accept the testimony of the *insured* or that of any person having a claim under this coverage resulting from the accident.

   The term *Underinsured Motor Vehicle* does not include a vehicle or equipment:
   (a) Owned by or furnished or available for the regular use of *you* or a *relative.*
   (b) Operated on rails or crawler-treads.
   (c) Located for use as a residence or premises.
   (d) To which SECTION I-LIABILITY COVERAGES -of this policy applies. This exception to the definition of *underinsured motor vehicle* does not apply to *you* or any *relative* if *you* or any *relative* sustain damages while *occupying,* or when struck by a vehicle for which coverage under Section I of this policy applies.

9. **Bodily injury** means bodily injury, sickness, or disease, including death, sustained by **you, your relatives** or any other person **occupying** an **insured auto** with **your** consent.

## LOSSES WE WILL PAY

We will pay damages an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** due to:

1. **Bodily injury** sustained by that **insured** and caused by an **accident**; and

2. **Property damage** caused by an **accident** if entry is made in the Declarations to this policy that both bodily injury and property damage Underinsured Motorists Coverage applies.

   The liability of the owner or operator for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle.**

   The amount of the **insured's** recovery for damages will be determined by agreement between the **insured** or his representative and us.

   If an **insured** reaches a tentative agreement to settle his claim against any person or organization legally responsible for his injuries, that **insured** or his legal representative should notify us of the tentative settlement and give us a reasonable opportunity to protect our recovery rights.

## EXCLUSIONS

### When this coverage Does Not Apply

1. There is no coverage for **bodily injury** or **property damage** sustained by an **insured** while operating or **occupying** a motorcycle or a motor-driven cycle which is not insured under the Liability Coverage of this policy.

2. This coverage will not benefit any workers' compensation insurer, self-insurer or an insurer under a similar disability benefits law.

3. We do not cover the United States of America or any of its Agencies as an **insured**, a third party beneficiary or otherwise.

4. We do not cover any person while **occupying** a vehicle described in the declarations on which Underinsured Motorists coverage is not carried.

5. There is no coverage for **bodily injury** or **property damage** sustained by an **insured** while operating or **occupying** a motor vehicle owned by or available for the regular use of **you** or any family member and which is not **insured** under the Liability coverage of this policy.

6. This coverage does not apply to the first $100 ($300 if the damage is caused by a hit-and-run driver or **phantom vehicle**) of the total amount of all **property damage.**

7. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages assessed against an underinsured motorist.

8. **Bodily injury** or **property damage** that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

9. **Bodily injury** or **property damage** that results from bio-chemical attack or exposure to bio-chemical agents is not covered.

10. This coverage does not apply to any liability assumed under any contract or agreement.

11. This coverage does not apply to damage caused by an **insured's** participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## LIMITS OF LIABILITY

1. The limits for "each person" is the most we will pay as damages for **bodily injury,** including those for care and loss of services, to one person in one **accident**.

2. Subject to the limit for "each person," the limit for each **accident** is the most we will pay as damage for **bodily injury**, including those for care and loss of services, to two or more persons in one **accident**.

3. The limit for **property damage** is the most we will pay for damages to property in one **accident**. This limit is subject to the provision of Exclusion 6.

4. The maximum limits apply for each auto for which a premium is shown in the Policy declarations.

5. We will pay no more than these maximums regardless of the number of:

   (a) Autos or **trailers** to which this policy applies;
   (b) **Insureds;**
   (c) Claims;
   (d) Claimants or policies; or
   (e) Vehicles involved in the **accident**.

6.  If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss. If this policy and any other policy providing Underinsured Motorists Coverage apply to the same **loss**, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy.

7.  Any amounts otherwise payable for damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** or **property damage** shall be reduced by all sums:

    (a) Paid under SECTION I - LIABILITY COVERAGES - of this policy;
    (b) Paid under SECTION II - AUTO MEDICAL PAYMENTS COVERAGE - of this policy; or
    (c) Paid under Personal Injury Protection Amendment, if any, to this policy.

    The total damages will be reduced by any amount paid by or for all persons or organizations liable for the injury.

8.  We will pay, up to the limits selected, any amount of damages for **bodily injury** which the named insured is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of **bodily injury** carried by the owner or the operator.

9.  When payment is made under this coverage, no payment will be made for **loss** paid to an **insured** under SECTION III - PHYSICAL DAMAGE COVERAGES-of this policy.

    If a claim is made under this coverage and under the liability coverages section of this policy, the amount payable under the bodily injury and property damage coverages will be reduced by any amounts payable to the same claimant under this coverage.

10. For **accidents** which occur in Alaska, all court costs charged to an **insured** in a covered lawsuit, including attorney fee payments shall not exceed the amount that could be awarded in accordance with the percentage schedule contested cases as specified in Alaska Rule of Civil Procedure 82(b) (1) in a case in which a judgment equal to the liability policy limit or limits applicable to the loss rendered.

## ARBITRATION: RESOLVING A DISAGREEMENT

1.  If **you** and we do not agree whether **you** are legally entitled to recover damages under this coverage based upon the liability facts of the **accident** or to the proper amount of such damages, the dispute may be resolved:

    (a) In a binding, voluntary arbitration proceeding as described in paragraph 2 below, or
    (b) By civil lawsuit brought by **you** in a court of competent jurisdiction.

2.  Unless we mutually agree otherwise, a voluntary arbitration shall be composed of a single arbitrator selected by mutual agreement. Arbitration services vendors may be consulted to facilitate the arbitration. If agreement cannot be reached on selection of an arbitrator, paragraph 1 (b) of this section shall apply. The cost of the arbitrator shall be paid by us. All other expenses of arbitration, including fees for attorneys and expert witnesses, shall be paid by the party who incurred them.

3.  Any arbitration will be limited to issues in actual dispute but will not include disputes involving the existence or policy limits of Underinsured Motorists Coverage. The decision of the arbitrator shall be binding except that we will not pay any amount in excess of the applicable policy limits of this coverage.

## TRUST AGREEMENT

When we make a payment under the coverage:

1.  We will be entitled to repayment out of any settlement or judgment the **insured** recovers from any person or organization legally responsible for the **bodily injury** or **property damage.** Our right applies only after the **insured** has been fully compensated for his loss.

2.  To the extent of our payment, the **insured** will hold in trust for our benefit all his rights of recovery against any person or organization responsible for damages. He will do whatever is necessary to secure all rights of recovery. He will do nothing after the loss to prejudice these rights.

3.  The **insured** will execute and give us all needed documents to secure his and our rights.

4.  If the payment was caused by an insolvent insurer, our right of reimbursement shall not include any rights against the insured of that insolvent insurer for any amounts that would have been paid by the insolvent insurer. We have the right to proceed directly against the insolvent insurer or its receiver. In pursuing these rights, we shall have any rights which the insured of the insolvent insurer might otherwise have had if the insured of the insolvent insurer had personally made the payment.

## CONDITIONS

1.  NOTICE

    As soon as possible after an **accident**, notice should be given to us or our authorized agent stating:

    (a) The identity of the **insured**;
    (b) The time, place and details of the accident;

(c) The names and addresses of the injured; and
(d) The names and addresses of any witnesses.

If the **insured** or his legal representative files suit before we settle under this coverage, he should immediately give us a copy of the suit papers.

2. ADDITIONAL DUTIES

If the **accident** involves a **hit-and-run vehicle** or **phantom vehicle**, the **insured** or someone on his behalf must:

(a) Notify the proper law enforcement agency within 72 hours for **accidents** involving a **phantom vehicle,**
(b) Promptly notify the police in all **accidents** with a **hit-and-run vehicle;**
(c) Claim a cause for action for damages against an unknown person; and
(d) Make available for our inspection, if requested, the auto occupied by the **insured** at the time of the **accident**.

3. ASSISTANCE AND COOPERATION OF THE **INSURED**

After we receive notice of a claim, we require the **insured** to take any reasonable and necessary action to preserve his recovery rights against any person or organization who may be legally responsible. If reasonable and necessary, the **insured** should make that person or organization a defendant in any action against us.

4. ACTION AGAINST US

We cannot be sued unless the **insured** or his legal representative has fully complied with all the policy terms.

5. PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the **insured** or other person making claim shall give us written proof of claim. The proof will be under oath if we ask. The proof will include details:

(a) Of the type and extent of injuries;
(b) The type of treatment; and
(c) Other facts which may affect the amount payable.

The injured person shall submit to examination by doctors of our choice. Such examinations will be at our expense and as often as we may reasonably ask. If the **insured** becomes incapacitated or dies, his legal representative must, if we ask, authorize us to obtain medical reports and copies of records.

6. PAYMENT OF LOSS

Any amount due is payable:

(a) To the **insured;** or
(b) To his authorized representative; or
(c) To a parent or guardian if the **insured** is a minor; otherwise
(d) To a person authorized by law to receive the payment

---

**SECTION V**
**General Conditions**
**These Conditions Apply to All Coverages in This Policy**

---

1. TERRITORY

This policy applies only to accidents, occurrences or **losses** during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. PREMIUM

When you dispose of, acquire ownership of, or replace a **private passenger**, **farm** or **utility auto**, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.
If the classification, sub-classification or territory of any insured auto or operator changes, we will make any needed premium adjustments as of the date of the change and in accordance with our manuals. This paragraph applies to:

(a) Section I - Liability Coverages;
(b) Section II - Auto Medical Payments; and
(c) Section III - Physical Damage Coverages.

3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.
We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, **your** policy will automatically include the broader coverage when effective in **your** state.
The premium for each auto is based on the information we have in **your** file. **You** agree:

(a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
(b) That *you* will cooperate with us in determining if this information is correct and complete.
(c) That *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4. ASSIGNMENT

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover *your* surviving spouse if covered under the policy prior to your death.  Until the expiration of the policy term, we will also cover;

(a) The executor or administrator of *your* estate, but only while operating an *owned auto* and while acting within the scope of his duties; and
(b) Any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

5. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If *you* cancel, the return premium will be computed pro-rata.

We will not refund any unearned premium amounting to $2.00 or less.

6. CANCELLATION BY US

We may cancel this policy by mailing to *you,* at the address shown in this policy, written notice stating when the cancellation will be effective.  The notice will state the reason for cancellation.

We will mail this notice:

(a) At least 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due, or within the first 30 days after the contract has been in effect;
(b) At least 20 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice.  The policy will cease to be in effect as of the date and hour stated in the notice.

When we cancel, earned premium will be computed pro-rata.  Payment or tender of unearned premium is not a condition of cancellation.

Any unearned premium will be refunded to *you* as soon as possible. It will be sent no later than 30 days after the date of our notice of cancellation.

We will not refund any unearned premium amounting to $2.00 or less.

7. CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a) *You* do not pay the initial premium on other than a renewal policy or any additional premiums for this policy to us or our agent; or
(b) *You* fail to pay any premium installment when due to us or our agent; or
(c) *You* or any customary operator has had his driver's license suspended or revoked during the policy period, or if a renewal, during the policy period or the 180 days immediately prior to the renewal date.

We have the right to modify any physical damage coverages under SECTION III by including a deductible not to exceed $100.

Our failure to cancel for any of the reasons above will not obligate us to renew the policy.

8. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you,* at the address shown in this policy, at least 20 days prior to the expiration date.  The mailing or delivery of this notice by us will be sufficient proof of notice.  This policy will expire without notice if any of following conditions exist:

(a) *You* do not pay any premium as we require to renew this policy.
(b) *You* have informed us or our agent that *you* wish the policy to be canceled or not renewed.
(c) *You* do not accept our offer to renew.

9.  OTHER INSURANCE

If the *insured* has other insurance against a loss covered by any Section of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other collectible insurance.

10. DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

11. DECLARATIONS

By accepting this policy, *you* agree that:

(a)  The statements in *your* application and in the declarations are *your* agreements and representations;
(b)  This policy is issued in reliance upon the truth of these representations; and
(c)  This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

12. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who intentionally conceals or misrepresents any material fact or circumstance relating to this insurance:

(a)  At the time application is made; or
(b)  At any time during the policy period; or
(c)  In connection with the presentation or settlement of a claim.

13. EXAMINATION UNDER OATH

The *insured* or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

14. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of the State of Washington are amended to conform to those statutes.

15. DISPOSAL OF VEHICLE

If *you* relinquish possession of a leased vehicle or if *you* sell or relinquish ownership of an owned auto, any coverage provided by this policy for that vehicle will terminate on the date and at the time *you* do so.

16. POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations.  But, it may be continued by our offer to renew and your acceptance prior to the expiration date.  Each period will begin and expire at 12:01AM local time at *your* address in the declarations.

17. CHOICE OF LAW

The policy and any amendment(s) and endorsements(s) are to be interpreted pursuant to the laws of the state of Washington.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS
### SPECIAL ENDORSEMENT - UNITED STATES GOVERNMENT EMPLOYEES

A.  Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using:

1.  Motor vehicles owned or leased by the United States Government or any of its Agencies, or

2.  Rented motor vehicles used for United States Government business, when such use is with the permission of the United States Government.  Subject to the limits described in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B.  The following limits apply to this coverage:

1.  A $100 deductible applies to each occurrence.

2.  For vehicles described in A.1 above, our liability shall not exceed the lesser of the following:

    (a)  The *actual cash value* of the property at the time of the occurrence; or
    (b)  The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    (c)  Two months basic pay of the *insured;* or
    (d)  The limit of Property Damage liability coverage stated in the declarations.

3.  For vehicles described in A.2 above, our liability shall not exceed the lesser of the following:

    (a)  The *actual cash value* of the property at the time of the occurrence; or
    (b)  The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
    (c)  The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.


W. C. E. Robinson
Secretary

O.M. Nicely
President

 **GEICO.**

GEICO ADVANTAGE INSURANCE COMPANY

Policy Number: ▮▮▮▮▮▮▮

# Automobile Policy Amendment
### Emergency Road Service Coverage

*Your* policy provisions are amended as follows:

### SECTION III

### PHYSICAL DAMAGE COVERAGES

**Emergency Road Service**

We will pay reasonable expenses an *insured* incurs for the *owned* or *non-owned auto*, for:

1. mechanical labor up to one hour at the place of breakdown;
2. lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3. if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4. towing it out if it is stuck on or immediately next to a public highway;
5. delivery of gas, oil, loaned battery, or change of tire.  WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

### OBTAINING SERVICE UNDER THIS AMENDMENT

*You* may secure service under this amendment in the following manner:

### SIGN AND DRIVE

The first method, called sign and drive, features a toll-free number in which the *insured* calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor.  The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the *insured's* expense.

### HIRED SERVICES

The second method occurs when the *insured* does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

**GEICO ADVANTAGE INSURANCE COMPANY**

# GEICO.

Policy Number: ▮▮▮▮▮▮

# Automobile Policy Amendment

## Automobile Personal Injury Protection - Washington

We agree with *you* subject to all terms of this Amendment and to all policy provisions except as modified by this Amendment.

We will provide the following benefits for loss and expense incurred due to *bodily injury* caused by accident and arising out of the ownership, maintenance or use of an *automobile*:

1. ***Medical and hospital benefits*** to or for each *insured*.

2. Benefits for funeral expenses for each *insured*.

3. ***Income continuation benefits*** to or for each *insured* who at the time of the accident was usually engaged in an occupation for pay.

4. ***Loss of services benefits*** to *you* if *you* suffer *bodily injury* caused by an accident while *occupying* or while a *pedestrian* through being struck by an *automobile*.

## DEFINITIONS

The definitions of *bodily injury*, *non-owned auto, personal vehicle sharing program, personal vehicle sharing, relative, temporary substitute auto, transportation network company*, *war*, and *you* in **Section I** of the policy apply to this coverage. The following special definitions apply:

1. ***Automobile*** means a *passenger car* that is registered or principally garaged in this state other than:

   a) a farm type tractor or other self-propelled equipment designed for use principally off public roads;

   b) a vehicle operated on rails or crawler treads;

   c) a vehicle located for use as a residence;

   d) a moped;

   e) a motor home.

2. ***Income Continuation Benefits*** means payments for the *insured's* loss of income from work because of *bodily injury* sustained by the *insured* in an automobile accident, less income earned during the benefit payment period. The combined weekly payment an *insured* may receive under personal injury protection, workers compensation, disability insurance, or other *income continuation benefits* may not exceed 85% of the *insured's* weekly income from work. The benefit payment period begins 14 days after the date of the automobile accident and ends at the earliest of the following:

   a) the date on which the *insured* is reasonably able to perform the duties of his or her usual occupation, or

   b) 54 weeks from the accident date, or

   c) the date of the *insured's* death.

3. ***Insured*** means:

   a) the named insured or a person who is a resident of the named insured's household and is either related to the named insured by blood, marriage, or adoption, or is the named insured's ward, foster child, or stepchild; or

   b) a person who sustains *bodily injury* caused by accident while:

      (i) *occupying* or using the *insured automobile* with the permission of the named insured; or

      (ii) a *pedestrian* accidentally struck by the *insured automobile.*

4. ***Insured Automobile*** means an *automobile* described on the declarations page of the policy.

5. ***Loss of Services Benefits*** means reimbursement for payment to others, not members of the *insured's* household, for expenses reasonably incurred for services in lieu of those the *insured* would usually have performed for his or her household without compensation, provided the services are actually rendered.

Reimbursement for loss of services ends on the earliest of the following:
a) the date on which the *insured* person is reasonably able to perform those services;
b) 52 weeks from the date of the automobile accident; or
c) the date of the *insured's* death.

6. *Medical and Hospital Benefits* means payments for all *reasonable and necessary expenses* incurred by or on behalf of the *insured* for injuries sustained as a result of an automobile accident for necessary:
   a) pharmaceuticals, eyeglasses, hearing aids, and prosthetic devices; and
   b) medical, surgical, X-ray, dental, ambulance, hospital, and professional nursing services

   that are rendered by a licensed medical provider within the legally authorized scope of the provider's practice and are essential in achieving maximum medical improvement for the *bodily injury* sustained in the accident. The medical treatment or diagnostic test must be consistent with the *insured's* clinically supported symptoms, diagnosis or indications, the treatment must be in accordance with the standards of good practice and standard professional treatment protocol, and must not include unnecessary testing or treatment.

Semi-private room charges are the most we will pay unless intensive care is medically required.

*Medical and hospital benefits* are payable for expenses incurred within three years from the date of the automobile accident.

7. *Occupying* means in or upon, entering into or alighting from.
8. *Passenger Car* means every motor vehicle, designed for carrying ten passengers or less and used for the transportation of persons, except motorcycles and motor-driven cycles.
9. *Pedestrian* means a natural person not *occupying* a motor vehicle.
10. *Reasonable and necessary expenses* means expenses that are the lowest of the following charges:
    a) The usual and customary fees charged by a majority of healthcare providers who provide similar medical services in the geographical area in which the charges were incurred;
    b) The fee specified in any fee schedule:
       i) applicable to medical payments, no-fault coverage, personal injury protection coverage included in motor vehicle liability policies issued in the state where medical services are provided; and
       ii) as prescribed or authorized by the law of the state where medical services are provided;
    c) The fees agreed to by both the *insured's* health care provider and us; or
    d) The fees agreed upon between the *insured's* health care provider and a third party when we have a contract with such third party.
11. *Ride-sharing* means the use of any vehicle by any person in connection with a *transportation network company* from the time a person logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time a person logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

## COVERAGE LIMITS

Payments made under Personal Injury Protection Coverage are limited to the *reasonable and necessary expenses* incurred. Regardless of the number of claims made or *insured automobiles* to which this coverage applies, our limits of liability under this coverage are as follows for each *insured* in any one accident:

**Option A**
1. *Medical and hospital benefits* of $35,000.
2. Funeral benefit of $2,000.
3. *Income continuation benefits* of $35,000, subject to a limit of $700 per week.
4. *Loss of services benefits* of $14,600. The maximum benefit is $40 per day.

**Option B**
1. *Medical and hospital benefits* of $10,000.
2. Funeral expense benefits of $2,000.
3. *Income continuation benefits* of $10,000 subject to a limit of $200 per week
4. *Loss of services benefits* of $5,000 subject to a limit of $200 per week. The maximum benefit is $40 per day.

We will reduce any amount payable under this coverage by the amount paid or payable under any workers compensation, or similar medical or disability benefits law.

In determining payment made under Personal Injury Protection coverage, we have a right to:
1. Obtain and use peer reviews and medical bill reviews of medical services and expenses to determine if they are *reasonable and necessary expenses* for the *bodily injury* sustained;

2. Use medical examinations of the *insured* to determine if the *bodily injury* was caused by an automobile accident and whether the medical expenses and services are *reasonable and necessary expenses* for the *bodily injury* sustained;
3. Enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

## OTHER INSURANCE

If there is other Automobile Medical Payments or Automobile Personal Injury Protection for *medical and hospital benefits* insurance, we will not be liable for a greater part of any loss under this coverage than our limit of liability bears to the total limit of liability under applicable insurance. However, if the accident causing injury occurs while *occupying* or as a *pedestrian* through being struck by a *temporary substitute auto* or *non-owned auto*, this insurance shall be excess over any other valid and collectible Automobile Medical Payments or Automobile Personal Injury Protection insurance.

## EXCLUSIONS

1. There is no coverage to or for any person who intentionally injures himself or herself.
2. There is no coverage to or for any person injured while participating in any prearranged or organized racing or speed contest or in practice or preparation for such a contest.
3. There is no coverage for *bodily injury* due to war, whether or not declared, or to an act or condition incident to such circumstances.
4. There is no coverage for *bodily injury* resulting from radioactive, toxic, explosive, or other hazardous properties of nuclear material.
5. There is no coverage for *you* or a *relative* for injury suffered while *occupying* any *automobile* owned by *you* or furnished for *your* regular use if such motor vehicle is not described on the declaration page of the policy under which a claim is made.
6. There is no coverage for a *relative* while *occupying* an *automobile* owned by him or furnished for his regular use if such vehicle is not described on the declaration page of the policy under which a claim is made.
7. There is no coverage for an *insured* whose *bodily injury* results or arises from the *insured's* use of an automobile in the commission of a felony.
8. There is no coverage for any person or organization while any motor vehicle is operated, maintained or used as part of any *personal vehicle sharing* facilitated by any *personal vehicle sharing program*.
9. There is no coverage for any person while any motor vehicle is used for *ride-sharing*. This exclusion does not apply to *you* or any *relative* while a passenger and not operating the motor vehicle.

## CONDITIONS

The following special conditions apply to this coverage:

1. **Policy Period; Territory.**
   This coverage applies only to accidents occurring during the policy period, within the United States of America, its territories, possessions or Canada.
2. **Notice.**
   As soon as practicable after an accident, written notice must be given to us stating:
   a) the time, place and details of the accident; and
   b) the names and addresses of the *insureds*.
   If an *insured* or his legal representative files suit against a third party to recover damages for *bodily injury*, he must provide us with a copy of the pleadings.
3. **Action Against Us.**
   No action will lie against us unless there has been full compliance with all the terms of this coverage.
4. **Proof of Claim.**
   As soon as practicable, the *insured* or his representative must give us written proof of claim, under oath if required, and any other information that may assist us in determining the amount due and payable.
5. **Reports and Examinations.**
   Upon each request, the *insured* or, in the event of his incapacity or death, his legal representative, must authorize us to obtain medical reports, copies of records and loss of income information. For *income continuation benefits* and *loss of services benefits*, we may require the *insured* to cooperate in furnishing us with reasonable medical proof of his inability to work. The *insured* shall submit to examination at our expense, by doctors chosen by us, as we reasonably require.
6. **Trust Agreement.**
   If we make a payment under this coverage we will be entitled to recover the amount of our payment out of the proceeds of any settlement or judgment that the person to whom we made payment may recover from anyone who was legally liable for the *bodily injury*.

If the **insured**, or we, or both incur legal expenses in recovering payments which benefit both, the expenses will be divided in proportion to each party's share of the recovery. The person to whom we made payment will hold in trust for our benefit all rights of recovery which he may have against anyone because of the **bodily injury** and he will do whatever is necessary to secure his and our rights. The person shall deliver to us all instruments and papers necessary to secure his and our rights and obligations.

**7. Subrogation.**

When we make a payment under this coverage, we will be subrogated to all the **insured's** rights of recovery against others. After the **insured** has been fully compensated for his or her loss, we will have the right to recover up to the amount of our payment from the remaining proceeds of the settlement or judgment.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible. The **insured** will do nothing after a loss to prejudice these rights. The **insured** will help us to enforce these rights.

**8. Arbitration.**

If any person making claim under this coverage and we do not agree as to the amount payable, the dispute will be resolved:

a) By binding, voluntary arbitration, if the person making the claim and we mutually agree to such arbitration; or
b) By a civil lawsuit brought by an **insured** in a court of competent jurisdiction.

The arbitration shall commence within a reasonable period of time. Unless we mutually agree otherwise, a voluntary arbitration shall be composed of a single arbitrator selected by mutual agreement.

The arbitrator will then hear and determine the question(s) in dispute. Any arbitration will be limited to issues in actual dispute but will not include disputes involving the existence or policy limits of Personal Injury Protection Coverage. The written decision of the arbitrator shall be binding on the **insured** and us as to the amount of benefits payable under Personal Injury Protection. The arbitrator has no authority to award:

a) Costs, expenses, interest or fees; or
b) An amount in excess of the available Limit of Liability for Personal Injury Protection.

Attorney's fees and fees for expert witnesses are to be paid by the party incurring them. Both parties will share equally the cost of the arbitrator.

Unless both parties agree otherwise, the arbitration will be conducted in the county in which the **insured** resides or the county where the **insured** resided at the time of the accident. Relaxed rules of evidence shall apply, unless other rules of evidence are agreed to by the parties. The arbitration shall be conducted pursuant to arbitration rules similar to those of the American Arbitration Association, the Center for Public Resources, the Judicial Arbitration and Mediation Service, Washington Arbitration and Mediation Service Chapter 7.04 RCW, or any other rules of arbitration agreed to by the parties.

**9. Payment of Loss.**

We may, at our option, pay:

a) the **insured**; or
b) the parent or guardian of the **insured** if he is a minor; or
c) the spouse, if the **insured** is incapacitated or deceased; or
d) any person or organization who renders the services for the **insured**.

Any payment shall reduce the amount payable under this coverage. Payment of loss will not be an admission of liability to any person.

We will pay any personal injury protection benefits owed within 30 days after satisfactory proof of claim has been received by us.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President


GEICO ADVANTAGE INSURANCE COMPANY

# Automobile Policy Amendment

Policy Number: ▮▮▮▮▮▮▮▮

***Your*** policy is amended as follows:

**SECTION V - GENERAL CONDITIONS**
The condition for POLICY PERIOD is revised as follows:

Unless otherwise cancelled, this policy will expire as shown in the declarations.  But, it may be continued by our offer to renew and ***your*** acceptance by payment of the required renewal premium prior to the expiration date.  Each period will begin and expire as stated in the declarations.


We affirm this amendment.


W. C. E. Robinson
Secretary

William E. Roberts
President



**GEICO ADVANTAGE INSURANCE COMPANY**
Policy Number: ███████████

# Automobile Policy Amendment
## Washington

*Your* policy is amended as follows:

## SECTION I - LIABILITY COVERAGES

### DEFINITIONS

The following definitions are revised as follows:

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

11. ***Utility auto*** means a vehicle, other than a ***farm auto***, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

13. ***You*** and ***your*** means the named insured shown in the declarations or his or her spouse or registered domestic partner if a resident of the same household. As used throughout this Policy, spouse includes a registered domestic partner or partner of a substantially similar same sex union formed in another state.

The following definitions are added:

14. ***Personal vehicle sharing program*** means any legal entity qualified to do business in any state that is engaged in the business of facilitating the sharing of private passenger motor vehicles for non-commercial use by individuals.

15. ***Personal vehicle sharing*** means the operation and use of a private passenger motor vehicle, by persons other than the vehicle's registered owner in connection with any ***personal vehicle sharing program.***

16. ***Ride-sharing*** means the use of any vehicle by any ***insured*** in connection with a ***transportation network company*** from the time an ***insured*** logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time an ***insured*** logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

17. ***Transportation network company*** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

Item **3.** is revised as follows:

3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:

    (a) Before the judgment, where owed by law, and until we pay, offer to pay, or deposit in court the amount due under this coverage;

    (b) After the judgment, and until we pay, offer to pay, or deposit in court, the amount due under this coverage.

### EXCLUSIONS

#### When Section I Does Not Apply

The introduction sentence is revised as follows:

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

Exclusion **1.** is revised as follows:

1. Section I does not apply, in excess of the minimum financial responsibility limits, to any vehicle used to carry goods for hire.

The following exclusions are added:

18. Section I does not apply to any vehicle:

    (a) used to carry persons for compensation or a fee; or

    (b) while being used for ***ride-sharing.***

    However, a vehicle used in an ordinary car pool is covered.

19. There is no coverage under this section for any person or organization while any motor vehicle is operated, maintained or used as part of any ***personal vehicle sharing*** facilitated by any ***personal vehicle sharing program.***

*20000146018080274607201568S*

## SECTION II - AUTO MEDICAL PAYMENTS
## EXCLUSIONS

Exclusion **1.** is revised as follows:

**1.** There is no coverage for ***bodily injury*** sustained by any occupant of an ***owned auto***;

    (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

    (b) while being used for ***ride-sharing***.

    However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

**10.** There is no coverage under this section for any person or organization while any motor vehicle is operated, maintained or used as part of any ***personal vehicle sharing*** facilitated by any ***personal vehicle sharing program.***

## SECTION III - PHYSICAL DAMAGE COVERAGES
## DEFINITIONS

The definitions of ***ride-sharing***, ***transportation network company***, ***personal vehicle sharing program*** and ***personal vehicle sharing*** under Section I also apply to Section III.

Definition **6. *Trailer*** is replaced with:

**6.** ***Trailer*** means a trailer designed to be towed by a ***private passenger auto*** and not used as a home, residence, office, store, display or passenger trailer. ***Trailer*** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY FOR *YOU*
### Comprehensive (Excluding Collision) is revised as follows:

1. We will pay for each ***loss***, less the applicable deductible, caused other than by ***collision*** to the ***owned auto*** or ***non-owned auto***. This includes glass breakage.

   At the option of the ***insured***, breakage of glass caused by ***collision*** may be paid under the collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for ***loss*** to personal effects due to:

       (a) Fire;        (d) Falling objects;

       (b) Lightning;    (e) Earthquake;

       (c) Flood;       (f) Explosion; or

                      (g) Theft of the entire automobile.

   The property must be owned by ***you*** or a ***relative***, and must be in or upon an ***owned auto***.

3. ***Losses*** arising out of a single occurrence shall be subject to no more than one deductible.

## EXCLUSIONS

Exclusion **1.** is revised as follows:

**1.** Section III does not apply to an auto;

    (a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

    (b) while being used for ***ride-sharing***.

    However, a vehicle used in an ordinary car pool is covered.

The following exclusion is added:

**17.** There is no coverage under this section for any person or organization while any motor vehicle is operated, maintained or used as part of any ***personal vehicle sharing*** facilitated by any ***personal vehicle sharing program.***

## LIMITS OF LIABILITY

Item **2.** is revised as follows:

**2.** Will not exceed the prevailing competitive price to repair or replace the property at the time of ***loss***, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the ***loss***. Although ***you*** have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price, which is the price we can secure from a competent and conveniently located repair facility. At ***your*** request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;

Item **7.** is deleted.

**CONDITIONS**

Condition **10.** Assignment is added.

**10.** ASSIGNMENT

With respect to Section III, Physical Damage Coverages, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

**SECTION IV - UNDERINSURED MOTORISTS COVERAGE**

**EXCLUSIONS**

The following exclusions are added:

**12.** There is no coverage under this section for any person or organization while any motor vehicle is operated, maintained or used as part of any *personal vehicle sharing* facilitated by any *personal vehicle sharing program.*

**13.** There is no coverage for *bodily injury* or *property damage* under this Section for any person or organization while an *owned auto* or *non-owned auto*:

(a) is being used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

(b) is being used for *ride-sharing.*

However, a vehicle used in an ordinary car pool is covered.

**ARBITRATION: RESOLVING A DISAGREEMENT**

Arbitration: Resolving a Disagreement is deleted in its entirety.

**SECTION V – GENERAL CONDITIONS**

Condition 5. Cancellation By The Insured is revised as follows:

**5.** CANCELLATION BY THE *INSURED*

*You* may cancel this policy prospectively by:

(a) Giving us written notice by mail, fax or email,

(b) Surrendering the policy to us, or

(c) Giving us verbal notice.

Upon receiving notice of cancellation from *you*, we will cancel the policy the later of the date the notice is received or the date *you* request the cancellation.

If *you* cancel, the return premium will be computed pro-rata.

We will not refund any unearned premium amounting to $2.00 or less.

We affirm this amendment.


W. C. E. Robinson
Secretary

William E. Roberts
President

# EXHIBIT B



**Tel:** 1-800-841-3000

geico.com

**GEICO ADVANTAGE INSURANCE COMPANY**
P.O. Box 509090
San Diego, CA 92150-9090

Date Issued: April 18, 2020

JUSTIN DAVID PARKER
███████████

Email Address: ███████████

# Declarations Page
This is a description of your coverage.
Please retain for your records.

**Policy Number:** ███████████
**Coverage Period:** ███████████
12:01 a.m. local time at the address of the named insured.

---

| **Named Insured** | **Additional Drivers** |
|---|---|
| Justin D Parker | None |

| **Vehicle** | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|
| 1 2013 Hyundai   Veloster | ███████████ | Clinton WA 98236 | Blue Fcu |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** |
|---|---|---|
| Bodily Injury Liability | | |
| Each Person/Each Occurrence | $25,000/$50,000 | $87.91 |
| Property Damage Liability | $25,000 | $101.84 |
| Personal Injury Protection | Option B | $33.40 |
| Underinsured Motorist | | |
| Each Person/Each Occurrence | $25,000/$50,000 | $11.35 |
| Underinsured Motorist Property Damage | $10,000 | $8.91 |
| Comprehensive | $500 Ded | $57.52 |
| Collision | $500 Ded | $202.13 |
| Emergency Road Service | Full | $14.25 |
| **Total Six Month Premium** | | **$517.31** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

---

### Discounts

| | |
|---|---|
| **The total value of your discounts is** | **$170.89** |
| Multiline .................................................................................. | $13.10 |
| Good Driver .............................................................................. | $104.39 |

*2000014601808027460720015879*

**Discounts continued**

Anti-Lock Brake ................................................................................................................$8.42

Sponsored Marketing ........................................................................................................$44.98

**The following discounts have also been applied**

Driving Experience    ...................................................................................................Included

Financial Responsibility    ...........................................................................................Included

---

**Contract Type:** A30WA

**Contract Amendments:** ALL VEHICLES - A30WA A54ED1 A54WA

**Unit Endorsements:**    A115 (VEH 1); A135 (VEH 1); UE77 (VEH 1)

---

### Important Policy Information

-We welcome you to our GEICO family in the Auto Voluntary B20 rate program.

-Please review the front and/or back of this page for your coverage and discount information.

-You are receiving a $44.98 discount based on your membership in BKHATH .

-**Reminder -** Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-**Claims** incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

---

# EXHIBIT C

# Looking for a no-hassle pricing on New or Used Car?

The GEICO Car Buying Service is here to help.



Shop with confidence and save, discovering great deals.

# We'll get you back on the road fast!

## The GEICO Car Buying Service provides:

- TrueCar® Certified Dealers dedicated to providing a no-hassle car buying experience.
- What others paid for new vehicle in your area so you don't overpay.
- A way to easily view and compare thousands of new and used vehicles online.
- TrueCar® representatives available to help you through the entire process.

A service you can trust when you need it most



*Visit us today at www.geico.com/replacemycar
or call 877-638-4126*

Your actual savings may vary based on mu tiple factors including the vehicle you select, region, dealer, and applicable manufacturer incentives.
This no obligation program is administered by TrueCar, Inc.

 **MARKET VALUATION REPORT**

*Prepared for GEICO*

 # REPORT SUMMARY

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Parker, Justin |
| Loss Vehicle | 2013 Hyundai Veloster Manual w/ Black Interior |
| Loss Incident Date | 05/15/2020 |
| Claim Reported | 05/19/2020 |

 ## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | |
| Claim Reference | |
| Adjuster | Meeds, Rodney |
| Appraiser | Meeds, Rod |
| Odometer | 94,553 |
| Last Updated | 05/19/2020 05:47 PM |

 ## VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 8,405.00** |
| Condition Adjustment | + $ 333.00 |
| **Adjusted Vehicle Value** | **$ 8,738.00** |
| REGESTRATION FEE* | + $ 8.00 |
| DMV FEE* | + $ 14.50 |
| **Value before Deductible** | **$ 8,760.50** |
| Deductible* | - $ 500.00 |
| **Total** | **$ 8,260.50** |

Adjustments indicated with an Asterisk (*) have been determined by GEICO and have been added here for convenience.

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by GEICO.

Loss vehicle has 5% greater than average mileage of 90,200.

**BASE VEHICLE VALUE**

This is derived per our Valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology............................2
Vehicle Information................................3
Vehicle Condition..................................6
Comparable Vehicles.............................8
Valuation Notes....................................13
Supplemental Information.......................14

**CCC ONE** MARKET VALUATION REPORT | Owner: Parker, Justin
Claim: ▮▮▮▮▮▮▮▮▮▮

# VALUATION METHODOLOGY

**How was the valuation determined?**



**CLAIM INSPECTION**

GEICO has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

**SEARCH FOR COMPARABLES**

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



**CALCULATE BASE VEHICLE VALUE**

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT | Owner: Parker, Justin
Claim: ███████████

# 🚘 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | CLINTON, WA 98236 |
| VIN | ████████████████ |
| Year | 2013 |
| Make | Hyundai |
| Model | Veloster |
| Body Style | Manual w/Black Interior |
| Body Type | Coupe |
| Engine - | |
|     Cylinders | 4 |
|     Displacement | 1.6L |
|     Induction | Turbocharged |
|     Fuel Type | Gasoline |
|     Carburation | Direct Injection |
| Transmission | 6 Speed Transmission |
| Curb Weight | 2800 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE ALLOWANCES

| | | |
|---|---|---|
| **Odometer** | 94,553 | - 290 |
| **Options** | | |
| Home Link | Reported | + 33 |
| Navigation System | Reported | + 264 |
| Electric Glass Roof | Reported | + 396 |
| Skyview Roof | Reported | + 173 |
| Aftermarket Film Tint | Reported | + 33 |
| Parking Sensors | Reported | + 66 |
| Backup Camera | Reported | + 66 |

Reported* Option(s) added after initial valuation

Allowances are factors influencing the value of the loss vehicle when compared to a typical vehicle. The typical vehicle is a vehicle of the same year, make, and model as the loss vehicle, including average mileage, and all standard equipment. These allowances are displayed for illustrative purposes only.

The Base Vehicle Value is calculated from the comparable vehicles with adjustments to reflect the loss vehicle configuration

## VEHICLE HISTORY SUMMARY

| | |
|---|---|
| Experian AutoCheck | No Title Problem Found |
| Insurance Services Organization/ National Insurance Crime Bureau | 9 Records Found |
| National Highway Traffic Safety Administration | 1 Recall |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Parker, Justin
Claim: ▮

# 🚌 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| **Odometer** | 94,553 | |
| **Transmission** | 6 Speed Transmission | ✓ |
| **Driver Convenience** | Keyless Entry | ✓ |
| | Power Windows | ✓ |
| | Power Locks | ✓ |
| | Power Mirrors | ✓ |
| | Heated Mirrors | ✓ |
| | Cruise Control | ✓ |
| | Intermittent Wipers | ✓ |
| | Tilt Wheel | ✓ |
| | Telescopic Wheel | ✓ |
| | Steering Wheel Touch Controls | ✓ |
| | Console/Storage | ✓ |
| | Overhead Console | 📋 |
| | Home Link | 📋 |
| **Instrument Panel** | Traction Control | ✓ |
| | Stability Control | ✓ |
| | Alarm | ✓ |
| | Air Conditioning | ✓ |
| | Rear Defogger | ✓ |
| | Hands Free | ✓ |
| | Communications System | ✓ |
| | Navigation System | 📋 |
| **Radio** | AM Radio | ✓ |
| | FM Radio | ✓ |
| | Stereo | ✓ |
| | Search/Seek | ✓ |
| | CD Player | ✓ |
| | Auxiliary Audio Connection | ✓ |
| | Premium Radio | ✓ |
| | Satellite Radio | ✓ |
| **Roof** | Electric Glass Roof | 📋 |

To the left is the equipment of the loss vehicle that GEICO provided to CCC.

✓ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

📋 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.



**CCC ONE** MARKET VALUATION REPORT

Owner: Parker, Justin
Claim:

# 🚙 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| | Skyview Roof | 🗐 |
| **Safety** | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Head/Curtain Air Bags | ✔ |
| **Paint** | Clearcoat Paint | 🗐 |
| | Metallic Paint | 🗐 |
| **Front End** | Fog Lamps | ✔ |
| | Power Steering | ✔ |
| | Power Brakes | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| **Glass And Mirrors** | Dual Mirrors | ✔ |
| | Signal Integrated Mirrors | ✔ |
| | Aftermarket Film Tint | 🗐 |
| **Seats** | Leather Seats | ✔ |
| | Bucket Seats | ✔ |
| | Reclining/Lounge Seats | 🗐 |
| | Heated Seats | ✔ |
| **Rear End** | Parking Sensors | 🗐 |
| | Backup Camera | 🗐 |
| | Rear Window Wiper | ✔ |
| | Rear Spoiler | ✔ |
| **Wheels** | 4-wheel Disc Brakes | ✔ |
| | Aluminum/Alloy Wheels | ✔ |

 **MARKET VALUATION REPORT**

Owner: Parker, Justin
Claim:

# 🚍 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Mechanical | AVERAGE PRIVATE | **Notes:** Minor seepage<br>**Guideline:**<br>**Transmission:** Fluid slightly discolored. A few areas of seepage.<br>**Engine:** Minor seepage. Belts and hoses firm, show minimal wear. Minimal dirt and grease in engine compartment. | $ 0 |
| Tires | DEALER RETAIL | **Notes:** RF 8/32 LF 9/32 RR 9/32 LR 8/32<br>**Guideline:**<br>**Rear Tires:** 69% to 90% of new. Example: Typical new car tires are 11/32, loss measures at 8/32 = 73% (8/11)<br>**Front Tires:** 69% to 90% of new. Example: Typical new car tires are 11/32, loss measures at 8/32 = 73% (8/11) | $ 32 |
| Paint | AVERAGE PRIVATE | **Notes:** REAR BUMPER SCRATCHES<br>**Guideline:**<br>Few small deep chips and/or scratches. No significant peeling and/or flaking. Minor swirl marks. Slight Fading. | $ 0 |
| Body | DEALER RETAIL | **Notes:** Sheet Metal: Few dings.<br>**Guideline:**<br>**Sheet Metal:** Few dings. No rust. All panels intact and properly aligned.<br>**Trim:** No broken and/or missing components. No dents. Few dings. | $ 198 |
| Glass | AVERAGE PRIVATE | **Notes:** Light surface scratches and/or pitting. Few chips.<br>**Guideline:**<br>Light surface scratches and/or pitting. Few chips. | $ 0 |
| Seats | AVERAGE PRIVATE | **Notes:** WEAR<br>**Guideline:**<br>Lightly soiled, faded and/or discolored. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |

GEICO uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Parker, Justin
Claim:

# 🚗 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes/Guidelines | Value Impact |
|---|---|---|---|
| Carpets | AVERAGE PRIVATE | **Notes:** WEAR<br>**Guideline:**<br>Lightly soiled and/or stained. Few small tears, holes and/or burn marks. No significant bare spots. | $ 0 |
| Dashboard | DEALER RETAIL | **Notes:** CLEAN<br>**Guideline:**<br>No significant scratches and/or gouges. Components firmly intact and functional. No significant wear. | $ 79 |
| Headliner | DEALER RETAIL | **Notes:** CLEAN<br>**Guideline:**<br>Clean. No significant holes and/or burn marks. No significant scuffing. | $ 24 |
| **Total Condition Adjustments** | | | **$ 333** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Parker, Justin
Claim: ▮▮▮▮▮▮▮▮▮▮▮▮

# 🚗 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Style | ✗ | ✗ | ✓ | ✗ |
| Odometer | 94,553 | 65,489 | 23,696 | 69,600 |
| Automatic Transmission | ✗ | ✓ | ✓ | ✓ |
| 6 Speed Transmission | ✓ | ✗ | ✗ | ✗ |
| Keyless Entry | ✓ | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ | ✓ |
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ | ✓ |
| Overhead Console | ✓ | ✗ | ✓ | ✗ |
| Home Link | ✓ | ✓ | ✗ | ✗ |
| Traction Control | ✓ | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ | ✓ |
| Alarm | ✓ | ✓ | ✓ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Hands Free | ✓ | ✓ | ✓ | ✓ |
| Communications System | ✓ | ✓ | ✓ | ✓ |
| Navigation System | ✓ | ✗ | ✗ | ✗ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ | ✓ |
| CD Player | ✓ | ✓ | ✓ | ✓ |
| Auxiliary Audio Connection | ✓ | ✓ | ✓ | ✓ |
| Premium Radio | ✓ | ✗ | ✓ | ✓ |
| Satellite Radio | ✓ | ✓ | ✓ | ✓ |
| Electric Glass Roof | ✓ | ✗ | ✓ | ✗ |
| Skyview Roof | ✓ | ✗ | ✓ | ✗ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ | ✓ |
| Front Side Impact Air Bags | ✓ | ✓ | ✓ | ✓ |
| Head/Curtain Air Bags | ✓ | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✗ | ✗ | ✗ |

**Comp 1**   Updated Date: 05/10/2020
**2013 Hyundai Veloster Automatic W/ black interior 4 1.6l Gasoline Direct Injection**
**VIN** ▮▮▮▮▮▮▮▮▮▮▮▮▮
**Dealership** Zag Motors Lynnwood
**Telephone** (425) 787-1818
**Source** Autotrader
**Stock #** L136068
**Distance from Clinton, WA**
9 Miles - Lynnwood, WA

**Comp 2**   Updated Date: 05/17/2020
**2013 Hyundai Veloster Automatic W/ black interior 4 1.6l Gasoline Direct Injection**
**VIN** ▮▮▮▮▮▮▮▮▮▮▮▮
**Dealership** Lee Johnson Hyundai Of Everett
**Telephone** (425) 258-2885
**Source** Autotrader
**Stock #** 2568
**Distance from Clinton, WA**
8 Miles - Everett, WA

**Comp 3**   Updated Date: 05/03/2020
**2013 Hyundai Veloster Automatic W/black interior 4 1.6l Gasoline Turbocharged Direct Injection**
**VIN** ▮▮▮▮▮▮▮▮▮▮▮▮
**Dealership** Apx Auto Brokers
**Telephone** (425) 967-3227
**Source** Truecar
**Distance from Clinton, WA**
11 Miles - Lynnwood, WA

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCCONE** MARKET VALUATION REPORT

Owner: Parker, Justin
Claim:

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Metallic Paint | ✔ | ✘ | ✘ | ✘ |
| Fog Lamps | ✔ | ✘ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Signal Integrated Mirrors | ✔ | ✘ | ✘ | ✔ |
| Tinted Glass | ✘ | ✔ | ✔ | ✔ |
| Aftermarket Film Tint | ✔ | ✘ | ✘ | ✘ |
| Cloth Seats | ✘ | ✘ | ✘ | ✘ |
| Leather Seats | ✔ | ✘ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ | ✘ |
| Heated Seats | ✔ | ✘ | ✘ | ✔ |
| Parking Sensors | ✔ | ✘ | ✘ | ✘ |
| Backup Camera | ✔ | ✘ | ✘ | ✘ |
| Rear Window Wiper | ✔ | ✔ | ✔ | ✔ |
| Rear Spoiler | ✔ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ | ✔ |
| Locking Wheels | ✘ | ✘ | ✔ | ✔ |

| **List Price** | | $ 9,995 | $ 11,291 | $ 9,991 |
|---|---|---|---|---|
| **Adjustments:** | | | | |
| Make/Model/Trim | | + $ 275 | + $ 275 | - $ 375 |
| Options | | + $ 998 | + $ 66 | + $ 1,031 |
| Mileage | | - $ 1,499 | - $ 2,980 | - $ 1,354 |
| Condition[1] | | - $ 532 | - $ 532 | - $ 532 |
| **Adjusted Comparable Value** | | **$ 9,237** | **$ 8,120** | **$ 8,761** |

| Options | Loss Vehicle | Comp 4 | Comp 5 | Comp 6 |
|---|---|---|---|---|
| Tech Package | ✘ | ✔ | ✘ | ✘ |
| Style | ✘ | ✔ | ✘ | ✘ |
| Odometer | 94,553 | 63,554 | 47,869 | 77,843 |
| Automatic Transmission | ✘ | ✔ | ✔ | ✘ |
| 6 Speed Transmission | ✔ | ✘ | ✘ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ | ✔ |

[1]The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

Comp 4     Updated Date: 03/01/2020
**2013 Hyundai Veloster Automatic W/ gray interior 4 1.6l Gasoline Direct Injection**
**VIN**
**Dealership** Chrysler Dodge Jeep Ram Hyundai Of Seattle
**Telephone** (206) 734-3289
**Source** Autotrader
**Stock #** K85862A
**Distance from Clinton, WA**

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Parker, Justin
Claim: ▮▮▮▮▮▮▮▮▮▮

# 🔍 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 4 | Comp 5 | Comp 6 |
|---|---|---|---|---|
| Power Locks | ✓ | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ | ✓ |
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ | ✓ |
| Overhead Console | ✓ | ✓ | ✓ | ✓ |
| Home Link | ✓ | ✗ | ✗ | ✗ |
| Traction Control | ✓ | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ | ✓ |
| Alarm | ✓ | ✓ | ✓ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ | ✓ |
| Hands Free | ✓ | ✓ | ✓ | ✓ |
| Communications System | ✓ | ✓ | ✓ | ✓ |
| Navigation System | ✓ | ✓ | ✗ | ✗ |
| AM Radio | ✓ | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ | ✓ |
| CD Player | ✓ | ✓ | ✓ | ✓ |
| Auxiliary Audio Connection | ✓ | ✓ | ✓ | ✓ |
| Premium Radio | ✓ | ✓ | ✓ | ✗ |
| Satellite Radio | ✓ | ✓ | ✓ | ✓ |
| Electric Glass Roof | ✓ | ✓ | ✓ | ✓ |
| Skyview Roof | ✓ | ✓ | ✓ | ✗ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ | ✓ |
| Front Side Impact Air Bags | ✓ | ✓ | ✓ | ✓ |
| Head/Curtain Air Bags | ✓ | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✗ | ✗ | ✗ |
| Metallic Paint | ✓ | ✗ | ✗ | ✗ |
| Fog Lamps | ✓ | ✓ | ✓ | ✗ |
| Xenon Headlamps | ✗ | ✗ | ✓ | ✗ |
| Power Steering | ✓ | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ | ✓ |
| Anti-lock Brakes (4) | ✓ | ✓ | ✓ | ✓ |

15 Miles - Seattle, WA

**Comp 5**    Updated Date: 03/15/2020
**2013 Hyundai Veloster Automatic W/ gray interior 4 1.6l Gasoline Direct Injection**
**VIN** ▮▮▮▮▮▮▮▮▮
**Dealership** Autoright Motors Lake Stevens
**Telephone** (425) 397-9100
**Source** Truecar
**Stock #** 2431
**Distance from Clinton, WA**
15 Miles - Lake Stevens, WA

**Comp 6**    Updated Date: 03/01/2020
**2013 Hyundai Veloster Manual W/ black interior 4 1.6l Gasoline Direct Injection**
**VIN** ▮▮▮▮▮▮▮▮▮
**Dealership** Private Owner Via Tred.com
**Telephone** (206) 471-6212
**Source** Autotrader
**Stock #** BkuEVVmRV
**Distance from Clinton, WA**
24 Miles - Seattle, WA

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

ʼThe **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Parker, Justin
Claim: 

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 4 | Comp 5 | Comp 6 |
|---|---|---|---|---|
| Dual Mirrors | ✔ | ✔ | ✔ | ✔ |
| Signal Integrated Mirrors | ✔ | ✘ | ✘ | ✘ |
| Tinted Glass | ✘ | ✔ | ✔ | ✔ |
| Aftermarket Film Tint | ✔ | ✘ | ✘ | ✘ |
| Cloth Seats | ✘ | ✘ | ✘ | ✔ |
| Leather Seats | | | ✔ | ✘ |
| Bucket Seats | ✔ | ✔ | ✔ | ✔ |
| Reclining/Lounge Seats | ✔ | ✘ | ✘ | ✘ |
| Heated Seats | ✔ | ✘ | ✘ | ✘ |
| Parking Sensors | ✔ | ✔ | ✘ | ✘ |
| Backup Camera | ✔ | ✔ | ✘ | ✔ |
| Rear Window Wiper | ✔ | ✔ | ✔ | ✔ |
| Rear Spoiler | ✔ | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ | ✔ |
| Locking Wheels | ✘ | ✘ | ✔ | ✘ |

| List Price | | $ 9,999 | $ 9,450 | $ 9,100 |
|---|---|---|---|---|
| **Adjustments:** | | | | |
| | Package | - $ 20 | | |
| | Make/Model/Trim | + $ 275 | + $ 275 | + $ 650 |
| | Options | - $ 330 | + $ 33 | + $ 569 |
| | Mileage | - $ 1,568 | - $ 2,123 | - $ 1,031 |
| | Condition[1] | - $ 532 | - $ 532 | - $ 532 |
| **Adjusted Comparable Value** | | **$ 7,824** | **$ 7,103** | **$ 8,756** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Parker, Justin
Claim: ▮▮▮▮▮▮▮▮▮

# COMPARABLE VEHICLES

### COMPARABLE VEHICLE CONTRIBUTION

| | Source | Comparable Vehicle | Price | Adjusted Comp Value | % of Base Vehicle Value |
|---|---|---|---|---|---|
| 1 | Verified | **2013 Hyundai Veloster Automatic W/black Interior 4 1.6l Gasoline Direct Injection** | $ 9,995 (List) | $ 9,237 | 21 % |
| 2 | Verified | **2013 Hyundai Veloster Automatic W/black Interior 4 1.6l Gasoline Direct Injection** | $ 11,291 (List) | $ 8,120 | 18 % |
| 3 | Verified | **2013 Hyundai Veloster Automatic W/black Interior 4 1.6l Gasoline Turbocharged Direct Injection** | $ 9,991 (List) | $ 8,761 | 21 % |
| 4 | Verified | **2013 Hyundai Veloster Automatic W/gray Interior 4 1.6l Gasoline Direct Injection** | $ 9,999 (List) | $ 7,824 | 14 % |
| 5 | Verified | **2013 Hyundai Veloster Automatic W/gray Interior 4 1.6l Gasoline Direct Injection** | $ 9,450 (List) | $ 7,103 | 12 % |
| 6 | Verified | **2013 Hyundai Veloster Manual W/black Interior 4 1.6l Gasoline Direct Injection** | $ 9,100 (List) | $ 8,756 | 14 % |
| **Base Vehicle Value** | | | | **$ 8,405.00** | |

The following comparable vehicle(s) were used to determine this Base Vehicle Value. The listed % of Base Vehicle Value displays what percentage the comparable vehicle contributed to the Base Vehicle Value as described in the Valuation Methodology section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 MARKET VALUATION REPORT

Owner: Parker, Justin
Claim: ▮▮▮▮▮▮▮▮▮▮▮

# VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by GEICO, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Washington Administrative Code 284-30. It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefit.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Parker, Justin
Claim:

# SUPPLEMENTAL INFORMATION

 **CARRIER INFORMATION**

**Prepared for:**     GEICO

**Web:**              Get back on the road fast!

GEICO offers an easy-to-use service designed to help you save time and money.

Simply visit www.geico.com/replaceyourcar today or call

(877)-638-4119 to get started!!

 **VEHICLE HISTORY INFORMATION**

**VINguard®**

VINguard® Message: VINguard has decoded this VIN without any errors

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC ONE MARKET VALUATION REPORT

Owner: Parker, Justin
Claim: ██████████████

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

### ISO Vehicle History:

| | |
|---|---|
| **Number of times reported to ISO:** | 9 |
| **ISO's file number:** | ███████████ |
| Loss date: | 07/20/2013 |
| Claim ref: | ███████████ |
| Point of Impact: | Right Front |
| Mileage: | 0009481 |
| ISO notified: | 07/31/2013 |
| Loss date: | 09/02/2015 |
| Claim ref: | ███████████ |
| Mileage: | 0039934 |
| ISO notified: | 10/22/2015 |
| Loss date: | 08/08/2016 |
| Phone: | 00000000000 |
| Claim ref: | ███████████ |
| Mileage: | 0000000 |
| ISO notified: | 08/23/2016 |
| Loss date: | 05/15/2020 |
| Phone: | ██████████ |
| Claim ref: | ███████████████ |
| Loss date: | 07/20/2013 |
| Phone: | ███████████ |
| Claim ref: | ███████████ |
| Loss date: | 09/02/2015 |
| Claim ref: | ██████████ |
| Loss date: | 06/21/2014 |
| Claim ref: | ██████████ |
| Loss date: | 01/13/2014 |
| Claim ref: | ██████████ |
| Loss date: | 08/08/2016 |
| Phone: | ██████████ |
| Claim ref: | ███████████ |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE** MARKET VALUATION REPORT

Owner: Parker, Justin
Claim: ▮▮▮▮▮▮▮▮▮▮▮▮▮

# SUPPLEMENTAL INFORMATION

🚗✅ **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ✓ | No Abandoned Record Found |
| Damaged | ✓ | No Damaged Record Found |
| Fire Damage | ✓ | No Fire Damage Record Found |
| Grey Market | ✓ | No Grey Market Record Found |
| Hail Damage | ✓ | No Hail Damage Record Found |
| Insurance Loss | ✓ | No Insurance Loss Record Found |
| Junk | ✓ | No Junk Record Found |
| Rebuilt | ✓ | No Rebuilt Record Found |
| Salvage | ✓ | No Salvage Record Found |

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✓ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✓ | No Frame Damage Record Found |
| Major Damage Incident | ✓ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✓ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✓ | No Odometer Problem Record Found |
| Recycled | ✓ | No Recycled Record Found |
| Water Damage | ✓ | No Water Damage Record Found |
| Salvage Auction | ✓ | No Salvage Auction Record Found |

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | 🗒 | Accident Record Found |
| Corrected Title | 🗒 | Corrected Title Record Found |
| Driver Education | ✓ | No Driver Education Record Found |
| Fire Damage Incident | ✓ | No Fire Damage Incident Record Found |
| Lease | ✓ | No Lease Record Found |
| Lien | ✓ | No Lien Record Found |
| Livery Use | ✓ | No Livery Use Record Found |
| Government Use | ✓ | No Government Use Record Found |
| Police Use | ✓ | No Police Use Record Found |
| Fleet | ✓ | No Fleet Record Found |
| Rental | ✓ | No Rental Record Found |
| Fleet and/or Rental | ✓ | No Fleet and/or Rental Record Found |
| Repossessed | ✓ | No Repossessed Record Found |
| Taxi use | ✓ | No Taxi use Record Found |
| Theft | ✓ | No Theft Record Found |
| Fleet and/or Lease | ✓ | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✓ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✓ | No Duplicate Title Record Found |

CCC provides GEICO information reported by Experian regarding the **2013 Hyundai Veloster** (▮▮▮▮▮▮▮▮). This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**

✓ No Event Found
⛔ Event Found
🗒 Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no sign ficant t tle events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
INFORMATION FOUND

AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

CCC ONE  MARKET VALUATION REPORT

Owner: Parker, Justin
Claim

# SUPPLEMENTAL INFORMATION

 **FULL HISTORY REPORT RUN DATE: 05/19/2020**

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 09/21/2012 | SD | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 11/15/2012 | RAPID CITY, SD | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/29/2012 | RAPID CITY, SD | 15 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 12/02/2013 | RAPID CITY, SD | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/04/2014 | RAPID CITY, SD | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/02/2015 | SD | | State Agency | COLLISION WITH ANOTHER VEHICLE |
| 06/02/2015 | SD | | Police Report | RIGHT FRONT IMPACT COLLISION |
| 06/02/2015 | RAPID CITY, SD | | Police Report | ACCIDENT REPORTED |
| 06/02/2015 | SD | | State Agency | SLIGHT DAMAGE REPORTED |
| 11/30/2015 | RAPID CITY, SD | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/01/2016 | RAPID CITY, SD | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/01/2017 | BILLINGS, MT | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/22/2017 | BILLINGS, MT | 61444 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 09/01/2017 | BILLINGS, MT | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/29/2017 | BILLINGS, MT | 61540 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 10/26/2017 | BILLINGS, MT | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 05/01/2018 | BILLINGS, MT | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/29/2018 | BILLINGS, MT | 64325 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 06/13/2018 | BILLINGS, MT | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 11/28/2018 | GLASGOW, MT | 72237 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 05/01/2019 | GLASGOW, MT | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 03/16/2020 | GLASGOW, MT | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 03/16/2020 | GLASGOW, MT | | Motor Vehicle Dept. | CORRECTED TITLE (Lien Reported) |

**AUTOCHECK TERMS AND CONDITIONS:**

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE.** MARKET VALUATION REPORT | Owner: Parker, Justin
Claim:

# SUPPLEMENTAL INFORMATION

Experian's Reports are compiled from mu tiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other t tle brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from add tional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, w thout lim tation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, util ty or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) w thout regard to ts conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC⬡ONE** MARKET VALUATION REPORT | Owner: Parker, Justin
Claim:

# SUPPLEMENTAL INFORMATION

## NHTSA VEHICLE RECALL

**NHTSA Campaign ID :** 19V204000

**Mfg's Report Date :** March 14, 2019

**Component :** ELECTRICAL SYSTEM, ENGINE

**Potential Number Of Units Affected :** 16,487

**Summary :** Hyundai Motor America (Hyundai) is recalling certain 2013 Veloster vehicles that are equipped with 1.6 liter turbo engines. The engine management software may cause premature ignition (pre-ignition) of the air/fuel mixture in the engine. The resulting excessive cylinder pressure may damage the engine.

**Consequence :** Engine damage can increase the risk of a fire or cause an engine stall, increasing the risk of a crash.

**Remedy :** Hyundai will notify owners, and dealers will update the engine management software, free of charge. The recall is expected to begin May 13, 2019. Owners may contact Hyundai customer service at 1-855-371-9460. Hyundai's number for this recall is 182.

**Notes :** Owners may also contact the National Highway Traffic Safety Administration Vehicle Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153), or go to www.safercar.gov.

The National Highway Traffic Safety Administration has issued 1 safety related recall notices that may apply to the above valued vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# EXHIBIT D



**GEICO Advantage Insurance Company**

Attn: Salvage Department, PO BOX 13528
Macon, GA 31208-3528

5/20/2020

Justin Parker



Dear Justin Parker,

The enclosed "Total Loss Settlement Explanation" is a breakdown of your vehicle's settlement. For your convenience, the Market Valuation is available on GEICO.com. The Net Settlement Amount is the Base Value of your vehicle, plus any applicable fees and adjustments. If you have any questions, please contact me at 253-219-2582. You can also access your claim information at GEICO.com.

Sincerely,

Rodney Meeds
253-219-2582

Encl:    SHCL30 WA

EC0977 (12/2014)

**TOTAL LOSS SETTLEMENT EXPLANATION**

| | |
|---|---|
| Date | May 20, 2020 |
| Accident Date | May 15, 2020 |
| Claim Number | ███████ |
| Vehicle | 2013 HYUNDAI Veloster Manual w/Black Interior |
| VIN | ████████ |
| Dear  : | Justin Parker |

This is a brief explanation of your claim settlement:

| | |
|---|---|
| Base Value | $8,405.00 |
| Condition Adjustment | $333.00 |
| Pre-Tax Adjustment | $0.00 |
| Sales Tax | $0.00 |
| Agreed Value | $8,738.00 |
| Title Fee | $14.50 |
| Salvage Title Fee | $0.00 |
| Vehicle License Fee | $0.00 |
| Post-Tax Adjustment | $8.00 |
| Less Deductible | $500.00 |
| Less % Neg. Percentage  0% | $0.00 |
| Less Retention Amount | $0.00 |
| Net Settlement Amount | $8,260.50 |
| Towing Charges | $0.00 |
| Storage Charges | $0.00 |

NOTICE:

State law requires that owners of Total Loss or Salvage motor vehicles apply for a salvage certificate within 10 days after a Total Loss Settlement.

Does Apply ☐          Does Not Apply ■

Unused license fees may be reimbursable from the Department of Motor Vehicles.
A copy of your vehicle valuation report is enclosed

Adjuster Rodney Meeds          Telephone No. 253-219-2582

Customer's  Signature  _____

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-62942-Civ-DIMITROULEAS

KERRY ROTH, on behalf of herself and
all others similarly situated,

       Plaintiff,

    vs.

GEICO GENERAL INSURANCE
COMPANY,

       Defendant.

_____

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff Kerry Roth ("Roth" or "Plaintiff")'s Motion for Summary Judgment [DE 152] and Defendant GEICO General Insurance Company ("GEICO" or "Defendant")'s Motion for Summary Judgment [DE 151], both filed on April 20, 2018. The Court has carefully considered the Motions [DE's 151, 152], the Responses [DE's 171, 172], and the Replies [DE's 188, 190], argument by counsel at the hearing on June 8, 2018, and the record herein. The Court is otherwise fully advised in the premises.

**I.    BACKGROUND**:

This case arises out of GEICO's alleged failure to pay state and local sales tax and title transfer fees in the settlement of total loss claims on leased vehicles.

Plaintiff Roth filed a putative state court class action against Defendant GEICO and related entities in Florida state court on August 30, 2016, which she replaced on November 8,

1

2016 with an Amended Class Action Complaint, and which she replaced on November 16, 2016 with a Second Amended Class Action Complaint. *See* [DE 1-2] at pp. 85-115. The Second Amended Complaint alleged two counts: Count I for breach of contract, and Count II for declaratory relief. Defendants removed the case to federal court on December 14, 2016, pursuant to the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. §§ 1332(d), 1453.

On January 24, 2017, the Court entered an Order Granting Defendants' Partial Motion to Dismiss Plaintiff's Class Action Complaint. *See* [DE 14]. Therein, the Court dismissed all Defendants other than GEICO General Insurance Company for lack of standing, as Plaintiff alleged no contract with any other Defendant. *See id.* The Court also dismissed Count II for declaratory relief. *See id.*

Accordingly, Plaintiff is proceeding on her breach of contract claim, as set forth in Count I of the Second Amended Complaint, alleging that GEICO does not include sales tax or title transfer fees in its Actual Cash Value payments made to insureds in settlement of total loss claims, in violation of GEICO's policy language.

On May 4, 2018, the Court entered an Order Granting Plaintiff's Motion for Class Certification. *See* [DE 165]. On May 18, 2018, the Court approved the form and manner of class notice. *See* [DE 211]. Plaintiff provided notice to the class by before June 1, 2018, and requests to exclude must be postmarked no later than July 2, 2018. *See* [DE 234].

Both sides now move for summary judgment in this action. In conjunction with the instant summary judgment motions, the parties have provided in their respective Statements of Material Facts and responses thereto [DE 151-1; DE 183; DE 188-1; DE 153; DE 171-1; DE

191][1] various factual assertions that are supported by the record. In some instances, the parties have not contested their adversaries' assertions. The Court will deem any uncontested factual assertions supported by the record to be admitted. *See* S.D. Fla. L.R. 56.1(b); Fed. R. Civ. P. 56(c), (e).

## II.  **LEGAL STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325. After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

---

[1] The parties' Statements of Material Facts and responses thereto [DE 151-1; DE 183; DE 188-1; DE 153; DE 171-1; DE 191] include various citations to specific portions of the record. Any citations herein to the Statements of Material and responses should be construed as incorporating those citations to the record.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.   DISCUSSION

On May 14, 2015, Plaintiff Roth entered into a lease agreement for an Audi A3. *See* [DE 152-19]. Plaintiff's leased vehicle was insured by Defendant GEICO's private passenger auto policy (the "Policy"). In June 2016, Plaintiff damaged her vehicle in an automobile accident, and she sought to recover under her GEICO Policy. Plaintiff submitted a claim for physical damage to her vehicle, and GEICO determined Plaintiff's vehicle to be a total loss.

The issue in this case is whether Plaintiff is entitled to sales tax and title transfer fees in addition to what Defendant paid her for the value of her total loss leased vehicle. Plaintiff seeks sales tax damages in the amount of tax she would incur if she were to buy her vehicle and title transfer fee damages in the minimum amount owed for the purchase of an owned vehicle ($75.25).

Defendant argues in its summary judgment motion that GEICO is entitled to summary judgment in its favor because GEICO's insurance policy and Florida law are clear that neither sales tax or title transfer fees are covered and therefore Plaintiff cannot demonstrate a breach of contract or damages. In contrast, Plaintiff argues in her summary judgment motion that she is entitled to summary judgment in her favor because GEICO violated the Policy terms and well-settled Florida law by refusing to pay all replacement costs – specifically, sales tax and title transfer fees –necessary to replace the total loss vehicle. For the reasons set forth below, the Court agrees with Plaintiff and will therefore grant Plaintiff's summary judgment motion and deny Defendant's summary judgment motion.

Under Florida law, to prevail in an action for breach of contract, the plaintiff must prove: (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. Dist. Ct. App. 1992)). Additionally, Florida law requires that the Court begin with interpreting the insurance policy with the plain meaning of the policy, and that any ambiguities in the policy shall be construed against the insurer and in favor of the insured and coverage. *See, e.g., Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016);

5

*Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 470 (Fla. 1993). Keeping these

legal standards in mind, the Court turns to the language of the Policy at issue.

The relevant section of the Policy is "**Section III – PHYSICAL DAMAGE**

**COVERAGES**," subtitled "**Your Protection For Loss Or Damage To Your Car**," which

protected Plaintiff against loss or damage to her Vehicle at the time of the Accident. *See* [DE

153-1] at 13. Damage to Plaintiff's Vehicle associated with the Accident was covered under the

"Collision" provision of Section III. Pursuant to this provision, GEICO is responsible for paying

"collision loss to the owned auto for the amount of each loss less the applicable deductible." The

Policy defines a "**Loss**" as "direct and accidental loss of or damage to: (a) An **owned** or **non-**

**owned auto**, including its equipment." *Id.* at 14. In the event of a loss, the Policy provides that

the limit of GEICO's liability for the loss:

1.      is the **actual cash value** of the property at the time of the **loss**.

2.      Will not exceed the prevailing competitive price to repair or replace the property
        at the time of **loss**, . . . with other of like kind and quality and will not include
        compensation for any diminution of value that is claimed to result from the **loss**.

                                              * * *

        **Actual cash value** or **betterment** of property will be determined at the time of
        the **loss** and will include an adjustment for **depreciation/betterment** and for the
        physical condition of the property.

*Id.* at 15.

The term "actual cash value" (hereinafter, sometimes abbreviated by the Court as

"ACV") is defined in the Policy as "the replacement cost of the auto or property less depreciation

or betterment." *Id.* at 13. Importantly for the Court's analysis herein, the Policy does not

distinguish between the ACV and replacement costs for owned, financed, or leased vehicles, and

provides no notice to GEICO's insureds that their leased vehicles will be valued differently

based on whether they were leased. Rather, the Policy provides notice of just the opposite: the Policy defines owned, financed, and leased vehicles to all be considered "owned autos" under the Policy. There are no separate provisions in the Policy that apply to owned vehicles only, financed vehicles only, or leased vehicles only. Additionally, GEICO charges its insureds the same premiums under the Policy for owned, financed, and leased vehicles. Furthermore, nothing in the Policy requires a leased vehicle insured to replace their total loss vehicle with another leased vehicle, or even to replace her total loss with any vehicle at all.[2]

Plaintiff asserts that sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, and therefore are components of actual cash value under the Policy. The Court agrees. Sales tax and title transfer fees are mandatory fees imposed by Florida law on the replacement of all vehicles. *See* Fla. Stat. § 212.05 (sales tax); § 319.34 (title transfer fee).[3] Further, settled law in the Eleventh Circuit, applying Florida law, is that when an insurer provides an actual cash value insurance policy covering the cost to repair or replace damaged insured property, it must pay all of the costs that are included in the cost of replacement or repair of the property. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2008) ("[T]axes are not unambiguously excluded from actual cash value coverage. . . [p]art of 'the cost' of new materials is the taxes paid to purchase those materials").

In the summary judgment decision in *Bastian v. United Services Automobile Assn.*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) in favor of the plaintiffs insureds and against defendant insurance company, the district court agreed "with the Eleventh Circuit's easily-reached

---

2 In fact, many leased vehicle insureds replaced their total loss with an owned vehicle.
3 The title transfer fee for purchasing a replacement vehicle is a minimum of $75.25. The title transfer fee for leasing a replacement vehicle is a minimum of $54.25.

conclusion [in *Mills*] that state and local taxes are part of the cost of replacing an item."[4] While Defendant is correct that *Bastian* is distinguishable as it involved owned vehicles being replaced with owned vehicles, whereas Plaintiff Roth's vehicle was a leased vehicle and she replaced it with a leased vehicle, the Court finds *Bastian* to be persuasive here. In *Bastian,* USAA's insurance policy defined "[a]ctual cash value" as "the amount it would cost, at the time of loss, to buy a comparable vehicle. As applied to your covered auto, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." *Bastian*, 150 F. Supp. 3d at 1289. Here, GEICO's Policy defines actual cash value as "the replacement cost of the auto or property less depreciation or betterment." [DE 153-1] at 13. The relevant policy language at issue in the two cases is comparable in meaning and application.

The plain language of the Policy explicitly treats all vehicles as "owned." Moreover, for purposes of ACV and replacement cost under the Policy, the replacement costs for both owned and leased vehicles is based on the price to purchase a replacement vehicle (*i.e*, "the prevailing competitive price to repair or replace the property . . . with other of like kind and quality."). Plaintiff submits GEICO's two Market Valuation Reports for Plaintiff Roth's vehicle. *Compare* [DE 152-9] *with* [DE 152-11]. The first Market Valuation Report was created before GEICO realized that Plaintiff's vehicle was a lease. The first report valued Plaintiff's vehicle at $23,947.00 and added sales tax in the amount of 6% of that valuation, an amount of $1,436.82. [DE 152-11]. After determining that Plaintiff's vehicle was a lease, Defendant created a second report, in which it kept the vehicle valuation exactly the same ($23,947.00) -- with the sole

---

4 Further, a policy's failure to address limitations on the payment of sales tax must be construed in favor of the insured. *See Bastian*, 150 F. Supp 3d at 1295 ("At best, the Policy says nothing on the topic, which the Court should construe in favor of the insured."); *see also Mills,* 511 F.3d at 1305.

exception that it excluded the 6% sales tax. Thus, pursuant to the Policy, Defendant pays on leased vehicle total loss claim based on the market value on the date of the loss to purchase a replacement vehicle of the same make, model, and condition, not the cost to lease a replacement vehicle. As explained *supra*, the cost to purchase a replacement vehicle includes all costs necessarily included in the replacement costs of a total loss vehicle *Mills* and *Bastian*. Accordingly, as sales tax and title transfer fees are mandatory, necessarily included in the replacement costs of a total loss vehicle, the Court concludes that they are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.[5] Therefore, GEICO's failure to pay leased vehicle total loss insureds sale tax in the amount of 6% of the value of the vehicle (plus any local taxes) and title transfer fees in the amount of $75.25 constitutes a material breach of contract.

While GEICO complies with its Policy provisions (and the mandates of *Mills* and *Bastian*) by paying sales tax of a minimum of 6% of the total loss vehicle value on vehicles that are owned outright or financed by the insured, GEICO violates its Policy provisions (and the mandates of *Mills* and *Bastian*) by refusing to pay full sales taxes on leased vehicles.[6] Further, regarding title transfer fees owed under the Policy, GEICO does not pay title transfer fees on any total loss vehicles, regardless of whether the total loss vehicle is leased, owned, or financed, in violation of the Policy provisions defining all vehicles as owned vehicles and requiring payment

---

5 GEICO's reliance on Fla. Stat § 626.9743(9) is unavailing, as that statute cannot limit coverage to less than what is provided for in the Policy. *See, e.g.*, *Bastian*, 150 F. Supp 3d at 1295.
6 GEICO's admitted practice of conditioning the payment of the sales tax component of ACV for leased vehicle total loss claims on whether the insured paid in the past, at lease inception, 100% of sales tax that would be due over the life of the lease is not supported by the Policy terms or Florida law.

of replacement costs be paid as part of ACV, as well as violating the mandates of *Mills* and *Bastian*.

Regarding damages, the third and final element of a breach of contract claim, Defendant contends that Plaintiff did not incur any damages, as she did not purchase the vehicle she totaled nor did she purchase her replacement vehicle. The Court disagrees. As noted by the Court, *supra,* nothing in the Policy requires a leased vehicle insured to replace their total loss vehicle with another leased vehicle, or even to replace her total loss with any vehicle at all. The damage to Plaintiff is the amount that she was underpaid by Defendant compared to the amount owed to her under the Policy.[7] Here, as to Plaintiff Roth, the amount of damages is $1,436.82 in sales tax and $75.25 in title transfer fees.

## IV.    CONCLUSION

Sales tax and title transfer fees are mandatory parts of the replacement cost under the GEICO Policy for Plaintiff Roth's (and the class members') leased total loss vehicle and therefore are components of "actual cash value" under the Policy. Accordingly, GEICO's failure to pay leased vehicle total loss insureds sale tax in the amount of 6% of the value of the vehicle (plus any local taxes) and title transfer fees in the amount of $75.25 constitutes a breach of contract.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.    Plaintiff Kerry Roth's Motion for Summary Judgment [DE 152] is **GRANTED;**

2.    Defendant GEICO General Insurance Company's Motion for Summary Judgment [DE 151] is **DENIED;**

---

[7] While it is not necessary to the Court's analysis of whether Plaintiff was damaged by the breach of contract, the Court notes that Plaintiff submitted record evidence that she paid sales tax and title transfer fees on the replacement of her total loss leased vehicle.

3. Plaintiff Roth is entitled to damages in the amount of $1,436.82 in sales tax, which is 6% of the value of Plaintiff's total loss vehicle; and the amount of $75.25 in title transfer fees, which is the minimum amount of title transfer fees that are due on the purchase of a replacement vehicle.

4. Class members are entitled to damages in the amount of 6% of the value of Plaintiff's total loss vehicle (plus any applicable local taxes); and the amount of $75.25 in title transfer fees.

5. Within sixty (60) days from the expiration of the July 2, 2018 deadline to opt out of the class, the parties shall jointly submit a proposed final judgment to the Court.

6. The July 13, 2018 calendar call is **CANCELLED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of June, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record

11